[No. S162435. Feb. 18, 2010.]

TERRY McCANN et al., Plaintiffs and Appellants, v.
FOSTER WHEELER LLC, Defendant and Respondent.

70

72

**COUNSEL**

Waters & Kraus, Waters Kraus & Paul, Paul C. Cook and Michael B. Gurien for Plaintiffs and Appellants.

Sedgwick, Detert, Moran & Arnold, Frederick D. Baker; Gordon & Rees and James G. Scadden for Defendant and Respondent.

National Chamber Ligation Center, Inc., Robin S. Conrad; Shook, Hardy & Bacon and Patrick J. Gregory for American Tort Reform Association, Coalition for Litigation Justice, Inc., Chamber of Commerce of the United States of America, American Chemistry Council, American Insurance Association, National Association of Mutual Insurance Companies, Property Casualty Insurers Association of America, National Association of Manufacturers and the State Chamber of Oklahoma as Amici Curiae on behalf of Defendant and Respondent.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Respondent.

Gordon & Rees, Michael Pietrykowski and Don Willenburg for Ingersoll-Rand Company and Leslie Controls, Inc., as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**GEORGE, C. J.**—This case presents a choice-of-law issue arising in a lawsuit filed by plaintiff Terry McCann (plaintiff) to recover damages for an illness, mesothelioma, allegedly caused by his exposure to asbestos. Although the complaint seeks recovery from numerous defendants, the issue before us relates solely to the potential liability of a single defendant, Foster Wheeler LLC (Foster Wheeler), a company that specially designed, manufactured, and provided advice regarding the installation of a very large boiler at an oil refinery in Oklahoma in 1957. At the time the boiler was being installed at the Oklahoma refinery, plaintiff, then an Oklahoma resident and a newly hired engineering sales trainee employed by the construction company that was installing the boiler, allegedly was exposed to asbestos at various times over a two-week period while he observed the application of asbestos insulation to the boiler by an independent insulation contractor.

Eighteen years later, in 1975, after working at various jobs in Minnesota and Illinois, plaintiff moved to Dana Point, California, to take a position as executive director of Toastmasters International. In 2005, after having retired from his Toastmasters position in 2001 and continuing to reside in California, plaintiff was diagnosed with mesothelioma. A few months later, plaintiff filed this action in California, naming numerous defendants, including Foster Wheeler.

Prior to trial, Foster Wheeler moved for summary judgment on various grounds, including that plaintiff's action against it was governed by, and barred under, an Oklahoma statute of repose that required any cause of action

against a designer or constructor of an improvement to real property to be filed within 10 years of the substantial completion of the improvement. In opposing the motion, plaintiff contended, first, that his cause of action for an injury or illness caused by exposure to asbestos should be governed by the relevant California statute of limitations (under which the action would have been timely filed), rather than by Oklahoma law, and, second, that in any event Foster Wheeler's boiler was not an improvement to real property within the meaning of the relevant Oklahoma statute of repose.

After the trial court initially determined that Oklahoma, rather than California, law should apply to the timeliness issue but that there were disputed questions of fact regarding whether the action against Foster Wheeler fell within the reach of the Oklahoma statute of repose, the parties agreed that the trial court, instead of a jury, should determine whether the Oklahoma statute applied. After considering the declarations filed by each party and a number of judicial decisions interpreting the Oklahoma statute, the trial court found that Foster Wheeler was a designer of an improvement to real property within the meaning of the Oklahoma statute of repose and entered judgment dismissing Foster Wheeler as a defendant in plaintiff's underlying action.

On appeal, the Court of Appeal concluded that the trial court erred in determining that Oklahoma law rather than California law should apply in these circumstances; as a consequence, the Court of Appeal did not reach the question whether the trial court erred in finding that the action against Foster Wheeler fell within the reach of the applicable Oklahoma statute of repose. In analyzing the choice-of-law issue under the "governmental interest" approach endorsed by the governing California decisions, the Court of Appeal reasoned that California "has an obvious interest in providing a remedy to its long-term residents who sustain asbestos-related injuries," but that Oklahoma's interest in the application of its statute of repose "is substantially . . . an interest in protecting Oklahoma defendants from liability for conduct occurring in Oklahoma." Because Foster Wheeler's corporate headquarters was located in New York rather than in Oklahoma, the Court of Appeal found that Foster Wheeler was not "among the defendants in whose favor Oklahoma's statute of repose is primarily directed" and consequently that "any significant interest of Oklahoma in the application of its statute of repose . . . is difficult to discern." The Court of Appeal further concluded that even if it were assumed a "true conflict" exists in this case, the interests of California would be more impaired by the application of Oklahoma law than would be the interests of Oklahoma by the failure to apply its law. Accordingly, the appellate court held that the trial court erred in applying the Oklahoma statute of repose to McCann's claim against Foster Wheeler, and reversed the trial court's judgment in favor of Foster Wheeler.

On petition by Foster Wheeler, we granted review primarily to consider whether the Court of Appeal was correct in determining (1) that Oklahoma's interest in the application of its statute of repose is substantially limited to application of the statute to companies headquartered in Oklahoma and does not equally encompass out-of-state companies who design or construct improvements to real property located in Oklahoma, and (2) that California's interests, rather than Oklahoma's interests, would be more impaired by the failure to apply the respective state's law on the facts presented here.

For the reasons discussed more fully below, we conclude that the decision of the Court of Appeal should be reversed. As we explain, prior California choice-of-law decisions demonstrate that, contrary to the conclusion reached by the Court of Appeal, Oklahoma's interest in the application of its statute of repose applies as fully to out-of-state companies that design and construct improvements to real property in Oklahoma as to Oklahoma companies that design and construct such improvements. Further, although California has a legitimate interest in affording a remedy to a resident of California whose asbestos-related illness first manifests itself when the individual is a California resident, past California cases indicate that it is generally appropriate for a court to accord limited weight to California's interest in providing a remedy for a current California resident when the conduct of the defendant from whom recovery is sought occurred in another state, at a time when the plaintiff was present in (and, in the present situation, a resident of) that other state, and where that other state has its own substantive law, that differs from California law, governing the defendant's potential liability for the conduct that occurred within that state. Taking these factors into consideration, we conclude that Oklahoma's interest would be more impaired by the failure to apply its law in these circumstances than would be California's interest by the failure to apply its law, and thus that the law of Oklahoma, rather than the law of California, should apply to the issue presented here.

# I

## A

The facts relevant to the choice-of-law issue before us are not in dispute.

As noted, Foster Wheeler's asserted liability for plaintiff's illness is based upon plaintiff's alleged exposure to asbestos in Oklahoma over a two-week period in July 1957, nearly 50 years prior to the time plaintiff was diagnosed with mesothelioma in 2005.

In July 1957, plaintiff, then an Oklahoma resident and a recent college graduate, was a newly hired engineering sales trainee employed by Tulsa

Refinery Engineering Company (TRECO), an oil refinery construction company that was engaged in constructing an expansion of an oil refinery owned by D-X Oil Company of Tulsa, Oklahoma (Sunray). In connection with the expansion, Sunray had ordered a specially designed steam generator from Foster Wheeler, a corporation headquartered in New York. The generator consisted of a custom-designed and extensively engineered boiler and related equipment that was to be designed and manufactured by Foster Wheeler in New York, and shipped unassembled to the refinery in Oklahoma, where it was to be assembled and installed by TRECO at the refinery, in consultation with an adviser employed by Foster Wheeler. The boiler in question was "huge"—more than 25 feet high and weighing many tons—and was to be installed on a specially poured foundation constructed by TRECO.

Pursuant to the terms of the contract between Sunray and Foster Wheeler, the generator was shipped to Sunray without insulation. The responsibility for installing the necessary insulation for the generator was to be borne by Sunray. Sunray hired an independent contractor—a company other than TRECO but not identified in the record—to install the insulation around the boiler. Plaintiff maintains that Foster Wheeler specified the need for insulation and knew or should have known the insulation was likely to contain asbestos.

As noted, at the time of the alleged exposure plaintiff was a newly hired engineering sales trainee employed by TRECO. Plaintiff testified at his deposition that his job responsibility at that time was simply to observe the ongoing construction at the refinery and to learn all there was to know about building a refinery. When plaintiff began work with TRECO, the assembly and installation of the Foster Wheeler boiler had been largely completed, and the independent contractor was in the process of installing insulation around the boiler and related equipment. Plaintiff acknowledged he did not assist in the actual application or installation of the insulation, but stated he observed the installation work for brief periods and occasionally stepped inside the boiler to take a look. He recalled observing the sawing of block insulation, the preparation and installation of insulating cement on the boiler, and the rising of dust clouds created by the mixing of the cement. In response to a question concerning the total amount of time he had been around the Foster Wheeler boiler, plaintiff stated that a "wild guess" would be "two or three days in total."

Construction of the generator and its insulation was completed within a few weeks of plaintiff's arrival at the Sunray refinery. After observing other aspects of the construction of the refinery expansion for more than a year, plaintiff moved to an office job in TRECO's Oklahoma headquarters in Tulsa.

In 1965, plaintiff left Tulsa and moved to Minnesota, where he began working in the advertising industry. In 1967, plaintiff moved to Chicago, Illinois, to take a job as manager of education for a food industry trade association. While in Chicago, he earned an MBA degree from Loyola University Chicago.

In 1975, plaintiff moved to Dana Point, California, accepting the position of executive director of Toastmasters International, a nonprofit organization that assists individuals in becoming more competent and comfortable in public speaking. He remained director of Toastmasters for 26 years until retiring in 2001.

In April 2005, plaintiff, who continued to reside in California, was diagnosed with mesothelioma. He filed the complaint in the underlying action in July 2005, naming numerous defendants, including Foster Wheeler.[1]

## B

As noted above, prior to the commencement of trial Foster Wheeler filed a motion for summary judgment. Among other contentions, the summary judgment motion asserted that the timeliness of the action should be governed by Oklahoma law, rather than California law, and that under Oklahoma law plaintiff's cause of action against Foster Wheeler was barred by an Oklahoma statute of repose[2] providing that any tort action for injury arising from "the

---

[1] In addition to the causes of action seeking damages for plaintiff's illness, the complaint contains a cause of action on behalf of plaintiff's wife, Lucille McCann, for loss of consortium. Because there is no contention that the wife's loss of consortium action could be maintained against Foster Wheeler in the event her husband's action against Foster Wheeler is barred under the Oklahoma statute of repose, for convenience we employ the term "plaintiff" in the singular to refer to Terry McCann.

After judgment was entered in the trial court and while the case was pending on appeal, Terry McCann died. A motion was filed in the Court of Appeal to substitute his wife as successor in interest pursuant to Code of Civil Procedure section 377.32, and that court granted the motion.

On September 22, 2008, plaintiff filed a motion in this court, requesting that we take judicial notice of both the motion to substitute filed in the Court of Appeal and the Court of Appeal's order granting the motion. Because the documents in question already had been transmitted to this court by the Court of Appeal, we denied the request for judicial notice, explaining that the documents in question were part of the record on appeal transmitted to this court by the Court of Appeal.

[2] In *Giest v. Sequoia Ventures, Inc.* (2000) 83 Cal.App.4th 300, 305 [99 Cal.Rptr.2d 476], the court explained the general difference between a statute of limitations and a statute of repose: "[W]hile a statute of limitations normally sets the time within which proceedings must be commenced once a cause of action accrues, [a] statute of repose limits the time within which an action may be brought and is not related to accrual. Indeed, 'the injury need not have occurred, much less have been discovered. Unlike an ordinary statute of limitations which begins running upon accrual of the claim, [the] period contained in a statute of repose begins

design, planning, supervision or observation of construction or construction of an improvement to real property" must be brought within 10 years of the "substantial completion" of the improvement. (Okla. Stat. tit. 12, § 109 (hereafter section 109).) Because plaintiff's lawsuit was filed long after the 10-year period specified in the Oklahoma statute of repose had expired, Foster Wheeler maintained that the action against it must be dismissed.

In support of this contention, the summary judgment motion first maintained that under the "governmental interest" analysis generally applied by California courts in resolving choice-of-law issues, the application of Oklahoma law rather than California law is appropriate. Thereafter, to support its claim that section 109—the Oklahoma statute of repose—applies to the facts of this case, the summary judgment motion relied upon an Oklahoma decision that determined the statute was applicable to the manufacturer and designer of a very large, specially designed piece of equipment installed in an industrial building. (*Ball v. Harnischfeger Corp.* (1994) 1994 OK 65 [877 P.2d 45] [holding § 109 applied to designer and manufacturer of large crane specially designed for installation in a particular building].) The motion attached a declaration of an engineer describing in detail the size and features of the boiler in question and the extensive engineering efforts that were entailed in designing and constructing the boiler to meet the particular specifications of the Sunray refinery.

In his opposition to the motion for summary judgment, plaintiff first maintained that section 361 of the Code of Civil Procedure (section 361)—California's so-called "borrowing statute," which we discuss below (pp. 83–87, *post*)—requires application of the California statute of limitations in this case without consideration of the governmental interest analysis that ordinarily governs the resolution of choice-of-law issues under California law. Although section 361 provides that, in general, a cause of action arising in another state cannot be maintained in California if the other state's law bars the action due to a lapse of time, this statute contains an exception for a person "who has been a citizen of this State, and who has held the cause of action from the time it accrued." The opposition to the summary judgment motion argued that plaintiff fell within this exception and that, as a consequence, section 361 mandated application of the relevant California statute of limitations without regard to the governmental interest analysis.

Plaintiff further argued that even if section 361 did not preclude resort to the governmental interest analysis, under a proper application of that analysis,

when a special event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted.' [Citation.] A statute of repose thus is harsher than a statute of limitations in that it cuts off a right of action after a specified period of time, irrespective of accrual or even notice that a legal right has been invaded. [Citation.]"

California law, rather than Oklahoma law, should be found applicable. Plaintiff maintained that California's governmental interest would be significantly impaired by application of the Oklahoma statute of repose to bar plaintiff's action against Foster Wheeler, whereas Oklahoma had no interest in barring a cause of action that, plaintiff claimed, arose outside Oklahoma's borders because plaintiff first incurred the symptoms and effects of mesothelioma while he was a longtime resident of California. Finally, plaintiff contended that even if Oklahoma law was applicable, Foster Wheeler did not fall within the reach of the Oklahoma statute of repose, because Foster Wheeler was merely the manufacturer of a defective product and should not be considered the designer of an improvement to real property within the meaning of the Oklahoma statute.

In ruling on the summary judgment motion, the trial court, although agreeing with Foster Wheeler's argument that Oklahoma law, rather than California law, should govern the timeliness of the action, nonetheless denied Foster Wheeler's motion for summary judgment, on the ground that there was a triable issue of fact concerning whether Foster Wheeler was a designer of an improvement to real property for purposes of the Oklahoma statute of repose.

Thereafter, Foster Wheeler filed a motion under Evidence Code section 402, seeking to have the trial court determine the "narrow factual question" whether Foster Wheeler was a designer of an improvement to real property under the terms of the Oklahoma statute of repose. Plaintiff joined in the request to have this question resolved by the trial court rather than by a jury, asking the trial court to rule in its favor on this issue and to preclude Foster Wheeler from bringing any evidence relating to the Oklahoma statute of repose before the jury.

After considering the evidence and legal argument presented by both parties on this issue, the trial court found that Foster Wheeler was a designer of an improvement to real property within the meaning of the Oklahoma statute of repose. Accordingly, the trial court entered judgment in favor of Foster Wheeler, dismissing plaintiff's action against Foster Wheeler.

## C

In the Court of Appeal, plaintiff on a number of grounds challenged the trial court's judgment in favor of Foster Wheeler.

First, plaintiff asserted the trial court erred in failing to conclude that the timeliness of plaintiff's action should be governed by California law, rather than Oklahoma law. Plaintiff again argued initially that application of the

California statute of limitations was compelled under the provisions of section 361, California's borrowing statute, without any need to consider the governmental interest analysis generally applicable to choice-of-law issues. Further, plaintiff maintained that even if the governmental interest analysis was applied, under that analysis the California statute of limitations for asbestos-caused injuries or illnesses, rather than the Oklahoma statute of repose, should govern.

Second, plaintiff maintained that even if Oklahoma law was applicable, the trial court erred in finding that Foster Wheeler fell within the reach of the Oklahoma statute of repose, because the evidence failed to support the trial court's conclusion that the boiler was an improvement to real property for purposes of the Oklahoma statute. In advancing this argument, plaintiff relied primarily upon Foster Wheeler's failure to prove that the boiler had been taxed as real property in Oklahoma.

In addressing plaintiff's contentions, the Court of Appeal initially expressed skepticism regarding plaintiff's argument that the provisions of section 361 properly should be interpreted to compel application of the California statute of limitations, without consideration of the governmental interest analysis, whenever the plaintiff in an action filed in a California court is a citizen of California at the time his or her cause of action accrues. Instead, the Court of Appeal suggested that although the language of section 361 requires a California court to apply the law of a foreign state barring an action arising in the foreign state as untimely when the plaintiff is *not* a California citizen at the time the cause of action accrues, when the plaintiff *is* a California citizen when the cause of action accrues "the statute, on its face, permits the court to apply California law . . . but it does not expressly require the court to do so; it merely excepts California citizens from the mandatory application of foreign law. We doubt . . . that the statutory exception for plaintiffs who were citizens when their cause of action accrued requires the court to apply California law, in circumstances where the application of California's choice of law principles would dictate otherwise." The Court of Appeal went on to state, however, that "[w]e need not definitively determine the point," in light of that court's subsequent conclusion that in this case "California's choice of law principles require the application of California law rather than Oklahoma law."

Thereafter, in discussing the choice-of-law issue, the Court of Appeal began by summarizing the governmental interest approach set forth in prior California decisions: "Three steps are involved. First, the court must determine whether the foreign law differs from California law. Second, if there is a difference, the court must determine whether a 'true conflict' exists by determining whether both states have a legitimate interest in applying their

own law to the case at hand. [Citation.] Third, when both states have a legitimate interest in the application of their respective laws, the court analyzes the 'comparative impairment' of the interests of the two states and applies the law of the state whose interest would be more impaired if its law were not applied. [Citation.]" The appellate court then proceeded to apply this approach to the circumstances here at issue.

The Court of Appeal first observed that the laws of Oklahoma and California clearly differ, because if the Oklahoma statute of repose applied, plaintiff's action against Foster Wheeler would be barred by the lapse of time, whereas plaintiff's action would be timely under the applicable California statute of limitations (Code Civ. Proc., § 340.2), which permits an action for injury or illness based upon exposure to asbestos to be brought within a year of the date the plaintiff first suffered disability and knew or reasonably should have known that such disability was caused by exposure to asbestos.

In considering the second step of the analysis—whether a "true conflict" exists—the Court of Appeal stated that "[w]e harbor serious doubt that a true conflict exists in this case between the interests of California and Oklahoma. California has an obvious interest in providing a remedy to its long-term residents who sustain asbestos-related injuries . . . . Oklahoma's interest—in protecting defendants who design or construct improvements to real property by placing a time limitation on their liability for tortious conduct—is considerably less evident in the circumstances of this case. Oklahoma's interest is substantially a local one, that is, an interest in protecting Oklahoma defendants from liability for conduct occurring in Oklahoma. [Citation.] In this case, however, Foster Wheeler is not a citizen of Oklahoma, and is therefore not among the defendants in whose favor Oklahoma's statute of repose is primarily directed. Moreover, Foster Wheeler's allegedly tortious conduct was in the design and fabrication of the boiler, which conduct occurred in New York or some location other than Oklahoma. Consequently, any significant interest of Oklahoma in the application of its statute of repose—and hence a 'true conflict'—is difficult to discern."

Finally, in the third step of the analysis, the Court of Appeal stated that even if it assumed Oklahoma has a legitimate interest in the application of its statute of repose in this case, California law should apply because California's interest would be more impaired than Oklahoma's interest if its law were not applied. In reaching this conclusion, the Court of Appeal reasoned: "California has a significant interest in permitting [plaintiff] to seek compensation for asbestos-related injuries manifesting themselves in California. [Plaintiff] has been a California resident for many years, his injury accrued in California, and he relied on California's health care facilities for his care. California has an interest in limiting health care costs that accrue as a result of barred

claims. This is particularly important in light of the prevalence of debilitating asbestos-related disease. California's interest in providing him with a remedy is far more significant than Oklahoma's interest in protecting a nonresident defendant from excessive financial burdens, particularly when the nonresident defendant's liability is premised on design and manufacturing activity that did not occur in Oklahoma. We therefore conclude that the interests of California would be more significantly impaired by the application of Oklahoma law than the converse. Accordingly, the trial court erred in applying the Oklahoma statute of repose to [plaintiff's] claim against Foster Wheeler."

Because it concluded the trial court erred in failing to apply California law in determining the timeliness of plaintiff's action against Foster Wheeler, the Court of Appeal did not reach plaintiff's alternative contention that the trial court erred in finding that, under Oklahoma law, Foster Wheeler was entitled to the protection of the Oklahoma statute of repose. Having concluded that plaintiff's action against Foster Wheeler was timely under California law, the Court of Appeal reversed the trial court's judgment in favor of Foster Wheeler.

We granted Foster Wheeler's petition for review.

## II

Traditionally, a state's general choice-of-law rules have been formulated by courts through judicial decisions rendered under the common law, rather than by the legislature through statutory enactments. In California, over the past four decades this court's decisions have adopted and consistently applied the so-called "governmental interest" analysis as the appropriate general methodology for resolving choice-of-law questions in this state. (See, e.g., *Reich v. Purcell* (1967) 67 Cal.2d 551 [63 Cal.Rptr. 31, 432 P.2d 727] (*Reich*); *Bernhard v. Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719] (*Bernhard*); *Offshore Rental Co. v. Continental Oil Co.* (1978) 22 Cal.3d 157 [148 Cal.Rptr. 867, 583 P.2d 721] (*Offshore Rental*); *Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95 [45 Cal.Rptr.3d 730, 137 P.3d 914] (*Kearney*).)

With respect to the category of statutes of limitation and statutes of repose, however, many jurisdictions have enacted specific statutory provisions that address the subject of choice of law. As discussed in a leading treatise and a number of law review articles, a majority of American states have adopted so-called "borrowing statutes" that direct the courts of a state, in lawsuits filed within that state, to apply or "borrow" the relevant statute of limitations or statute of repose *of a foreign jurisdiction* under the particular circumstances specified in the statute, rather than to apply the statute of limitations

of the forum jurisdiction. (See generally Leflar et al., American Conflicts Law (4th ed. 1986) §§ 127–128, pp. 348–354 (Leflar Treatise); Ester, *Borrowing Statutes of Limitation and Conflict of Laws* (1962–1963) 15 U.Fla. L.Rev. 33 (Ester Article); Vernon, *Statutes of Limitation in the Conflict of Laws: Borrowing Statutes* (1960) 32 Rocky Mtn. L.Rev. 287.)

The general popularity of borrowing statutes is explained by the common law background against which such statutes were enacted. Under early common law conflict-of-law principles, rules of law ordinarily were characterized as either "substantive" or "procedural," and procedural matters universally were held to be governed by the local or forum law. Because early common law decisions characterized statutes of limitations as procedural rather than substantive, the general rule at that time was that the local statute of limitations of the forum state—rather than another state's statute of limitations—applied to an action filed in the forum state, regardless of the location of the most significant events and circumstances underlying the cause of action or relating to the parties. (Leflar Treatise, *supra*, § 127, pp. 348–349.) Thus, even when a cause of action arose out of an accident in one state and all the parties were residents of that state, if a lawsuit was filed in a different state, the court in which the action was filed generally would apply its own state's statute of limitations, rather than the statute of limitations of the other state.

When the period specified in the forum state's statute of limitations was *shorter* than that in the other state's statute of limitations, application of the early common law rule would not necessarily create a serious problem or result in an unfair result, because if the forum's statute of limitations had expired, the plaintiff, at least as a theoretical matter, still could bring the action in the other state. A more problematic situation was presented, however, when the period provided in the applicable statute of limitations of the forum state was *longer* than that in the applicable statute of limitations in the state where the cause of action arose. In that setting, a plaintiff who failed to timely file an action in the state in which the action arose would be provided the opportunity to search out another jurisdiction in which the applicable period under the relevant statute of limitations for the cause of action at issue was longer and in which the action could be maintained—a classic example of questionable forum shopping.

This is the principal problem to which borrowing statutes were generally addressed. (See, e.g., *Pack v. Beech Aircraft Corporation* (1957) 50 Del. 413 [132 A.2d 54, 57].) Although the provisions of the various states' borrowing statutes differ in a variety of respects, these enactments typically "borrow" the statute of another state when the cause of action in question "arose," "originated," or "accrued" in the other state and would be barred as untimely

in that state. (See Ester Article, *supra*, 15 U.Fla. L.Rev. 33, 45–56.) Many borrowing statutes, however, also include exceptions that exempt from the reach of the borrowing statute lawsuits that are filed in the courts of the enacting state by residents or citizens of that state. (See *id.*, at pp. 69–72.)

California first enacted a borrowing statute very early in its history, in 1851, as part of the state's initial comprehensive legislation regulating proceedings in civil cases. (Stats. 1851, ch. 5, § 532, p. 134.)[3] When the Code of Civil Procedure was adopted in 1872, the early 1851 statute was codified, with only a minor change in language, as section 361. The language of section 361, as enacted in 1872, remains unchanged to this day.

Section 361 provides in full: "When a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this State, except in favor of one who has been a citizen of this State, and who has held the cause of action from the time it accrued."

Section 361 thus creates a general rule that when a cause of action has arisen in another jurisdiction but cannot be maintained against a particular defendant in that jurisdiction because of the lapse of time, the action cannot be maintained against that defendant in a California court. The statute contains an exception, however, for a plaintiff "who has been a citizen of this State, and who has held the cause of action from the time it accrued." Past cases establish that this exception applies only where the plaintiff was a California citizen at the time the cause of action accrued, and does not extend to a plaintiff who became a citizen of California after the cause of action accrued but before the lawsuit in question was filed. (See, e.g., *Biewend v. Biewend* (1941) 17 Cal.2d 108, 115 [109 P.2d 701]; *Grant v. McAuliffe* (1953) 41 Cal.2d 859, 865 [264 P.2d 944]; accord, *Miller v. Stauffler Chem. Co.* (1978) 99 Idaho 299 [581 P.2d 345, 347–348].)

Although application of section 361 generally is straightforward in a case involving, for example, a typical automobile accident—in which the allegedly tortious conduct, the resulting injury, and compensable damage all occur at the same time and in the same place—proper application of the statute is more problematic in a case, like the present one, in which the defendant's allegedly injury-producing conduct occurred in another state at a much earlier

---

[3] The 1851 statute provided in full: "When a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this State, except in favor of a citizen thereof, who has held the cause of action from the time it accrued." (Stats. 1851, ch. 5, § 532, p. 134.)

date but the plaintiff's resulting illness or injury does not become apparent and reasonably is not discovered until many decades later, at a time when the plaintiff has established residence in California.[4] In the factual setting here at issue, it may be reasonably debatable whether plaintiff's cause of action against Foster Wheeler "arose" in Oklahoma or instead in California for purposes of section 361, and whether plaintiff was a citizen of California or of Oklahoma at the time the cause of action "accrued" within the meaning of the term as used in this borrowing statute.[5]

■ Even if we assume either that the cause of action at issue "arose" in California for purposes of section 361 or that plaintiff was a citizen of

[4] In *Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 529 [66 Cal.Rptr.2d 438, 941 P.2d 71] (*Buttram*), we discussed some of the difficulties in determining when a cause of action for asbestos-related mesothelioma can be said to accrue: "Mesothelioma is a latent, progressively developing disease—decades can often pass between the time a person is first exposed to asbestos and the time he first develops a cancerous mesothelioma tumor. Moreover, although early formation of undetected cellular changes ultimately leads to contraction of the disease, it may be years before the cancerous cells will result in a tumor large enough to be detected, be medically diagnosed, or cause symptomatology of the disease. It has been observed generally that 'diagnosis of toxic related disease is almost always an uncertain enterprise, particularly in the early stages of the disease. Lack of understanding of biological and physiological mechanisms, absence of serious dysfunction, and the slowly progressive nature of some diseases contribute to the difficulties of diagnosis. . . . [¶] The combination of lengthy latency periods and diagnostic difficulties is a unique feature of toxic substances cases for purposes of statutes of limitations analysis [or related legal issues]: No temporally discrete event exists that encompasses the defendant's breach and the plaintiff's injury. Instead, insidious disease litigation involves an extended chronology of causation unlike traditional snapshot torts.' " (Material in brackets added in *Buttram*.)

[5] As we explained in *Buttram*, *supra*, 16 Cal.4th 520, 530, "a cause of action may be viewed in the eyes of the law as 'accruing' [or 'arising'] for different purposes on different dates, depending on the purpose for which the accrual [or the arising] determination is being sought." (Material in brackets added here.)

In the present circumstances, there may be some question whether, for purposes of section 361, plaintiff's cause of action should be considered to have "arisen" in Oklahoma, where plaintiff was exposed to the asbestos for which Foster Wheeler assertedly is responsible, or, instead, in California, where plaintiff resided when his illness first was diagnosed and gave rise to compensable damage that constitutes a necessary element of his cause of action. Similarly, it may be debatable whether plaintiff was a citizen of California when his cause of action "accrued" within the meaning of section 361 (because, under California law, the general rule is that "for statute of limitations purposes, . . . a cause of action for a latent injury does not accrue until the plaintiff discovers or reasonably should have discovered that he has suffered a compensable injury" (*Buttram*, *supra*, 16 Cal.4th 520, 530)), or, instead, plaintiff should be viewed as having been a citizen of Oklahoma when his cause of action "accrued" within the meaning of section 361 (to avoid the risk that persons who have been exposed to a toxic substance but have not yet suffered a compensable injury may "forum shop" by thereafter moving to California).

In a variety of settings, cases in other jurisdictions have reached differing conclusions in determining where a cause of action has "arisen" or "accrued" within the meaning of a borrowing statute. (See generally Annot. (1959) 67 A.L.R.2d 216, 221–223; Annot. (1944) 149 A.L.R. 1224, 1226–1227; Annot. (1931) 75 A.L.R. 203, 211–220.)

California from the time the cause of action "accrued" within the meaning of this statute—and thus that section 361 does not *require* application of Oklahoma law rather than California law on the facts of this case—we agree with the Court of Appeal that this statute cannot properly be interpreted *to compel* application of the California statute of limitations without consideration of California's generally applicable choice-of-law principles. Although at the time section 361 was adopted, the then prevailing choice-of-law doctrine generally would have called for the application of the relevant California statute of limitations in a case in which section 361 did not mandate application of another jurisdiction's law (see, e.g., *Royal Trust Co. v. MacBean* (1914) 168 Cal. 642, 646 [144 P. 139]), nothing in section 361 indicates that this statute was intended to freeze the then prevailing general choice-of-law rules into a statutory command, so as to curtail the judiciary's long-standing authority to adopt and modify choice-of-law principles pursuant to its traditional common law role. (Cf. *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 813–823 [119 Cal.Rptr. 858, 532 P.2d 1226].) Accordingly, now that the earlier methodology for resolving choice-of-law issues has been replaced in this state by the governmental interest mode of analysis (see, e.g., *Reich, supra,* 67 Cal.2d 551, 553–557; *Bernhard, supra,* 16 Cal.3d 313, 316–321), in those instances in which section 361 does not mandate application of another jurisdiction's statute of limitations or statute of repose the question whether the relevant California statute of limitations (or statute of repose) or, instead, another jurisdiction's statute of limitations (or statute of repose) should be applied in a particular case must be determined through application of the governmental interest analysis that governs choice-of-law issues generally. (See, e.g., *Ashland Chemical Co. v. Provence* (1982) 129 Cal.App.3d 790, 793–794 [181 Cal.Rptr. 340] [holding that under California law, governmental interest analysis is applicable to resolve a choice-of-law issue relating to the statute of limitations]; *Nelson v. International Paint Co.* (9th Cir. 1983) 716 F.2d 640, 644 [same].)

Thus, we now turn to the task of applying the general governmental interest analysis to the circumstances before us in the present case.

### III

Recently, in *Kearney, supra,* 39 Cal.4th 95, we summarized the mode of analysis called for by the governmental interest approach. "In brief outline, the governmental interest approach generally involves three steps. First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court

finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state' [citation], and then ultimately applies 'the law of the state whose interest would be more impaired if its law were not applied.' " (39 Cal.4th at pp. 107–108.)

## A

With regard to the first of these steps, we agree with the Court of Appeal that "[t]he laws of Oklahoma and California clearly differ."

## 1

Under section 109 (the Oklahoma statute of repose), plaintiff's cause of action would be barred by the lapse of time, because that statute "bars any tort action which arises more than ten years after the substantial completion of the improvement to real property." (*Riley v. Brown and Root, Inc.* (1992) 1992 OK 114 [836 P.2d 1298, 1300].)[6] Although the Oklahoma statute in question has been interpreted not to bar products liability actions against the manufacturers and sellers of mass-produced products (see, e.g., *Durham v. Herbert Olbrich GMBH & Co.* (10th Cir. 2005) 404 F.3d 1249, 1254–1255; *Uricam Corp. v. W.R. Grace & Co.* (W.D.Okla. 1990) 739 F.Supp. 1493)—and thus would not preclude plaintiff from suing companies that manufactured or sold the asbestos insulation to which he was exposed (*Uricam Corp. v. W.R. Grace & Co., supra,* 739 F.Supp. at p. 1496)—the Oklahoma Supreme Court has interpreted the statute of repose to protect a manufacturer/designer of a specially designed improvement to real property. (*Ball v. Harnischfeger Corp., supra,* 877 P.2d 45, 50 ["If the manufacturer was acting as a designer, planner, construction supervisor or observer, or constructor, the statute of

---

[6] Section 109 provides in full: "No action in tort to recover damages [¶] (i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property, [¶] (ii) for injury to property, real or personal, arising out of any such deficiency, or [¶] (iii) for injury to the person or for wrongful death arising out of any such deficiency, [¶] shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement."

Although section 109 was enacted in 1978, well after the boiler in question was designed and installed, Oklahoma decisions make clear that section 109 applies to tort actions for injuries resulting from improvements that predated the statute, and that such application does not improperly infringe upon an injured plaintiff's rights. (See, e.g., *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.* (1989) 1989 OK 139 [782 P.2d 915, 918–921]; *Jaworsky v. Frolich* (1992) 1992 OK 157 [850 P.2d 1052, 1054–1056]; *Mooney v. YMCA of Greater Tulsa* (1993) 1993 OK 33 [849 P.2d 414, 416].)

repose will apply. It is the specialized expertise and rendition of particularized design which separates those protected from mere manufacturers and suppliers."]; see also *Goad v. Buschman Co.* (N.D.Okla. 2008) 2008 U.S.Dist. Lexis 27297, pp. *7–*21 and cases cited, affd. (10th Cir. 2009) 2009 U.S.App. Lexis 6058.)

Although, as we have explained above, plaintiff argued in the Court of Appeal and continues to maintain in this court that the trial court erred in finding that the boiler in question was an improvement to real property for purposes of the Oklahoma statute of repose, the Court of Appeal never reached that issue, because it concluded that even if Foster Wheeler fell within the reach of the Oklahoma statute, under California's choice-of-law principles California law would apply. In reviewing the conclusion reached by the Court of Appeal, we similarly shall assume for purposes of determining the choice-of-law issue that Foster Wheeler's conduct brought it within the reach of the relevant Oklahoma statute of repose.[7] Under this premise, plaintiff's action against Foster Wheeler plainly would be untimely under Oklahoma law, because this action was filed more than 10 years after substantial completion of the improvement.[8]

**2**

By contrast, plaintiff's action against Foster Wheeler clearly would be timely if California law were applied. Although this state has enacted a

---

[7] Because the Court of Appeal did not address plaintiff's challenge to the trial court's determination that the boiler in question constituted an improvement to real property for purposes of the relevant Oklahoma statute, we conclude, in light of our determination that the appellate court erred in its resolution of the choice-of-law issue, that it is appropriate to remand this matter to the Court of Appeal to permit that court, in the first instance, to pass on plaintiff's challenge to the trial court's application of Oklahoma law to the circumstances of this case.

[8] While this matter was pending before this court, the Oklahoma Legislature enacted comprehensive "lawsuit reform" legislation that includes the following provision pertaining to asbestos-related claims: "Notwithstanding any other provision of law, with respect to any asbestos or silica claim not barred as of the effective date of this act, the limitations period shall not begin to run until the exposed person or claimant discovers, or through the exercise of reasonable diligence should have discovered, that the exposed person or claimant is physically impaired as set forth in this chapter by an asbestos- or silica-related condition." (2009 Okla. House Bill No. 1603, § 64, subd. A [chaptered as ch. 228].)

Although the initial clause of this provision ("Notwithstanding any other provision of law") could be interpreted to mean that the new statute creates an exception to the Oklahoma statute of repose for asbestos-related claims (permitting such claims to be brought so long as they satisfy all of the requirements and limitations embodied in the new statute), the new provision explicitly applies only "to any asbestos . . . claim *not barred as of the effective date of this act*" (italics added) and thus would not affect an action, like the present one, that was barred by the Oklahoma statute of repose long before the enactment of the new legislation. Accordingly, the Oklahoma statute of repose continues to represent the relevant Oklahoma law for purposes of the present proceeding.

statute of repose applicable to causes of action arising out of a latent deficiency in the design or construction of an improvement to real property that is somewhat similar to the relevant Oklahoma statute of repose (see Code Civ. Proc., § 337.15),[9] the California statute, unlike its Oklahoma counterpart, applies only to actions for injury to property, not to personal injury actions. (*Martinez v. Traubner* (1982) 32 Cal.3d 755, 757–761 [187 Cal.Rptr. 251, 653 P.2d 1046].) ■ Furthermore, California has enacted a special statute of limitations explicitly governing the time for bringing an action "for injury or illness based upon exposure to asbestos," which permits such an action to be brought up to one year after the plaintiff both (1) first suffered disability *and* (2) knew or reasonably should have known that the disability was caused or contributed to by exposure to asbestos. (Code Civ. Proc., § 340.2;[10] see *Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1138 [95 Cal.Rptr.2d 701, 998 P.2d 403].) Here, plaintiff, who previously had retired for reasons unconnected to his asbestos-related illness, filed this action within a few months after he first was diagnosed with mesothelioma, and thus the action clearly would be timely under the provisions of section 340.2. (See *Hamilton v. Asbestos Corp., supra*, 22 Cal.4th at pp. 1138–1147.)

Accordingly, the law of Oklahoma clearly differs from the law of California with respect to the timeliness of plaintiff's cause of action.

**B**

The second step of the governmental interest analysis requires us to examine "each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." (*Kearney, supra*, 39 Cal.4th at pp. 107–108.)

---

[9] Code of Civil Procedure section 337.15 provides in relevant part: "(a) No action may be brought to recover damages from any person . . . who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property. [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency."

[10] Code of Civil Procedure, section 340.2 provides in relevant part: "(a) In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action shall be the later of the following: [¶] (1) Within one year after the date the plaintiff first suffered disability. [¶] (2) Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure. [¶] (b) 'Disability' as used in subdivision (a) means the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation."

1

Oklahoma decisions indicate that by establishing a relatively lengthy (10-year) period in which a cause of action for a deficiency in design of an improvement to real property may be brought, but at the same time terminating all liability after that deadline regardless of whether the plaintiff's injury had yet occurred or become manifest, the relevant statute of repose was intended to balance the interest of injured persons in having a remedy available for such injuries against the interest of builders, architects, and designers of real property improvements in being subject to a specified time limit during which they would remain potentially liable for their actions in connection with such improvements. (See, e.g., *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, *supra*, 782 P.2d 915, 920–921.) The Oklahoma high court held in *St. Paul Fire & Marine Ins. Co.* that the statute of repose, by establishing this type of fixed time limit in which any cause of action must be brought, serves "the legitimate government objectives of providing a measure of security for building professionals whose liability could otherwise extend indefinitely." (*Id.* at p. 921.) The court further noted that the statute "also serves the legitimate objective of avoiding the difficulties in proof which arise from the passage of time." (*Ibid.*)

In discussing the interest of Oklahoma embodied in the statute, the Court of Appeal in the present case expressed the view that "Oklahoma's interest is substantially a local one, that is, an interest in protecting Oklahoma defendants from liability for conduct occurring in Oklahoma." The appellate court indicated that Oklahoma's interest in the application of this statute does not extend to, or at least does not apply as strongly to, a non-Oklahoma business that designs or constructs an improvement to real property located in Oklahoma. Because Foster Wheeler is a non-Oklahoma corporation (incorporated in Delaware, with its headquarters in New York), and because the design and manufacture of the boiler occurred in New York, the Court of Appeal expressed the view that "any significant interest of Oklahoma in the application of its statute of repose . . . is difficult to discern."

We conclude that the Court of Appeal did not accurately assess the interest of Oklahoma embodied in the statute of repose here at issue. When a state adopts a rule of law limiting liability for commercial activity conducted within the state in order to provide what the state perceives is fair treatment to, and an appropriate incentive for, business enterprises, we believe that the state ordinarily has an interest in having that policy of limited liability applied to out-of-state companies that conduct business in the state, as well as to businesses incorporated or headquartered within the state. A state has a legitimate interest in attracting out-of-state companies to do business within the state, both to obtain tax and other revenue that such businesses may

generate for the state, and to advance the opportunity of state residents to obtain employment and the products and services offered by out-of-state companies. In the absence of any explicit indication that a jurisdiction's "business friendly" statute or rule of law is intended to apply only to businesses incorporated or headquartered in that jurisdiction (or that have some other designated relationship with the state—for example, to those entities licensed by the state), as a practical and realistic matter the state's interest in having that law applied to the activities of out-of-state companies within the jurisdiction is equal to its interest in the application of the law to comparable activities engaged in by local businesses situated within the jurisdiction.

This court's decision in *Offshore Rental, supra,* 22 Cal.3d 157, supports the foregoing conclusion. In *Offshore Rental,* the plaintiff was a California company that brought suit to recover economic damages it had suffered when one of its key employees had been injured in Louisiana, allegedly as a result of the negligence of one of the defendant company's employees in Louisiana. The case presented a choice-of-law issue because California law permits a company to maintain a cause of action for the economic damage suffered by the company as a result of an injury to a key employee (an action separate from, and independent of, the employee's own personal injury action), whereas Louisiana law does not permit an employer to maintain such a cause of action (permitting only the employee's personal injury action). The defendant company in *Offshore Rental* was a Delaware corporation, headquartered in New York, that did business in Louisiana, California, and other states.

In examining the question whether Louisiana had an interest in having its law (denying the plaintiff company's cause of action for injury to a key employee) applied in the circumstances of that case, the court in *Offshore Rental, supra,* 22 Cal.3d 157, explained: "The accident in question occurred within Louisiana's borders; although the law of the place of the wrong is not necessarily the applicable law for all tort actions [citation], the situs of the injury remains a relevant consideration. At the heart of Louisiana's denial of liability lies the vital interest in promoting freedom of investment and enterprise within Louisiana's borders, *among investors incorporated both in Louisiana and elsewhere.* The imposition of liability on defendant, therefore, would strike at the essence of a compelling Louisiana law." (22 Cal.3d at p. 168, italics added & omitted.) Thus, although the defendant in that case was an out-of-state company doing business in Louisiana, the California court

in *Offshore Rental* recognized that the interest of Louisiana in protecting companies from what the latter state viewed as excessive liability extended to such a company.[11]

In concluding that Oklahoma had little or no interest in the application of its law to the present case because Foster Wheeler was not an Oklahoma company, the Court of Appeal relied upon two passages in *Reich, supra,* 67 Cal.2d 551, in which the court observed that "[t]he state of the place of the wrong has little or no interest in [the application of its statute limiting damages for wrongful death] when none of the parties reside there" (67 Cal.2d at p. 556), and that a state's interest in avoiding the imposition of excessive financial burdens on defendants is a "primarily local" interest. (*Ibid.*) The Court of Appeal also relied upon a similar passage in *Hurtado v. Superior Court* (1974) 11 Cal.3d 574 [114 Cal.Rptr. 106, 522 P.2d 666], which declared that "a state's interest in limiting recovery in wrongful death actions is in protecting resident defendants from excessive financial burdens." (11 Cal.3d at p. 586.) Both *Reich* and *Hurtado,* however, concerned automobile accidents involving private individuals, not commercial entities, and nothing in those decisions suggests that a state's interest in the application of a statute limiting liability for specified commercial activity carried on within the state applies only to local companies and not equally to out-of state companies doing business within the state. Unlike our decision in *Offshore Rental, supra,* 22 Cal.3d 157, *Reich* and *Hurtado* had no occasion to address that question.

 Furthermore, just as the Court of Appeal erred in relying on the non-Oklahoma location of Foster Wheeler's incorporation or headquarters as a basis for determining that Oklahoma lacked an interest in having its statute of repose applied here, the appellate court similarly erred in suggesting that Oklahoma's interest in having its statute applied was negated by the circumstance that the design and manufacture of the boiler in question occurred in New York rather than in Oklahoma. The statute of repose here at issue protects not only construction-related businesses that engage in their activities at the Oklahoma site of the improvement, but also commercial entities, such as establishments performing architectural and other design-improvement work, that conduct their activities away from the location of the improvement but whose potential liability flows from a plaintiff's interaction with, or exposure to, the real property improvement in Oklahoma. Under the premise that the activities of Foster Wheeler in this case bring it within the reach of the Oklahoma statute of repose (see, *ante,* at p. 89), we conclude that, for

---

[11] The defendant company in *Offshore Rental, supra,* 22 Cal.3d 157, owned property in Louisiana in addition to doing business in that state (*id.* at pp. 160–161, 164), but the policy underlying the applicable Louisiana rule—to protect businesses acting within Louisiana's borders "from the financial hardships caused by the assessment of excessive legal liability or exaggerated claims resulting from the loss of services of a key employee" (*id.* at p. 164)—would apply to all commercial entities doing business in Louisiana.

purposes of the governmental interest analysis, Oklahoma clearly possesses an interest in having the statute applied in the present case and that its interest is not diminished by the circumstance that some of Foster Wheeler's activities occurred outside of Oklahoma.[12]

Accordingly, contrary to the view expressed by the Court of Appeal, we conclude that Oklahoma has a real and legitimate interest in having its statute of repose applied under the circumstances presented here.

## 2

At the same time, we also recognize that California has an interest in having California law applied in this case.

As discussed above, the applicable California statute—Code of Civil Procedure section 340.2—permits an action for injury or illness based upon exposure to asbestos to be brought up to one year after the plaintiff first suffered disability (as defined by the statute) *and* knew or reasonably should have known that the disability was caused or contributed to by such exposure. This statute, enacted in 1979 to lengthen the period of time in which an asbestos-related claim may be brought, reflects a state interest in providing persons who suffer injury or illness as a result of their exposure to asbestos a fair and reasonable opportunity to seek recovery for their injury or illness, taking into account not only the typically lengthy period between exposure to asbestos and the development of disease but also the often substantial period between the initial discovery or diagnosis of a disease and the time when the disease becomes disabling. (See, e.g., *Hamilton v. Asbestos Corp., supra,* 22 Cal.4th 1127, 1138–1139; *Blakey v. Superior Court* (1984) 153 Cal.App.3d 101, 105–106 [200 Cal.Rptr. 52]; *Nelson v. Flintkote Co.* (1985) 172 Cal.App.3d 727, 735 [218 Cal.Rptr. 562].) The language of section 340.2 does not specify the class of persons to whom the statute was intended to apply, but by its terms the provision is not limited only to persons who were exposed to asbestos in California. In view of the legislation's clear recognition of the unusual nature of asbestos-related injury and illness, and the statute's objective to provide injured or ill persons a fair and adequate opportunity to seek recovery for such asbestos-related harm, we conclude that

---

[12] Furthermore, although the Court of Appeal appears to have assumed that plaintiff's claim against Foster Wheeler rested solely upon that entity's conduct in New York, plaintiff asserted in his opposition to the summary judgment motion that, because Foster Wheeler "knew or should have known that the normal and intended operation of its boilers would include the use and application of asbestos containing insulation, and that end users, like [plaintiff], would be exposed to asbestos during the installation of that insulation[,] Foster Wheeler . . . had a duty to warn of this foreseeable hazard." To be effective, of course, such a warning would have to have been communicated to plaintiff in Oklahoma.

California has an interest in having this statute applied to a person, like plaintiff, who is a California resident at the time the person discovers that he or she is suffering from an asbestos-related injury or illness, even when the person's exposure to asbestos occurred outside California.

 A number of prior California cases support the conclusion that California has a legitimate interest in having a statutory provision that affords a remedy for or a benefit to an injured person or business applied when, as here, the injured person or business is a California resident or business, even when the injury-producing conduct occurs outside California. In *Offshore Rental, supra,* 22 Cal.3d 157, for example, although ultimately concluding that the Louisiana rule of law denying a cause of action for injury to a company's "key employee" should be applied, this court, in discussing the second step of the governmental interest analysis, determined that California had a real and legitimate interest in having its rule of law—permitting such a cause of action—applied in favor of a California company that had suffered such an injury, even though the injury to the company's key employee had occurred in another state. (See 22 Cal.3d at p. 164 ["California's economy and tax revenues are affected regardless of the situs of physical injury."].)

The decision in *Castro v. Budget Rent-A-Car System, Inc.* (2007) 154 Cal.App.4th 1162 [65 Cal.Rptr.3d 430] (*Castro*) also supports the conclusion recognizing a legitimate interest on the part of California under such circumstances. In *Castro,* the plaintiff, a California resident, was injured in a traffic accident that occurred in Alabama, allegedly caused by the negligence of the driver of a rented truck that was owned and leased by the defendant Budget Rent-A-Car. Under Alabama law, the owner of a motor vehicle is not liable for the negligence of a permissive user of the vehicle except under limited circumstances; under California law, by contrast, an owner of a motor vehicle generally is vicariously liable, up to a specified amount, for the negligence of a permissive user. (154 Cal.App.4th at p. 1179.) In discussing whether California had an interest in having its law applied under the circumstances presented by that case, the court in *Castro* first observed that a primary purpose of the California permissive user law—"motivating vehicle owners who allow others to use their vehicles within California to exercise care in the selection and supervision of such permissive users, and . . . protecting persons using California roadways" (*id.* at p. 1182)—would not be furthered by the application of California law in that case, because the accident in question occurred in Alabama rather than in California (*id.* at pp. 1181–1182). Nonetheless, the court in *Castro* concluded that California "does have a legitimate governmental interest in having its permissive user statute applied *based on Castro's status as a California resident. Application of that statute to circumstances such as these would serve to ensure that California residents injured in traffic accidents in other states would be compensated for*

*their injuries and not become dependent on the resources of California for necessary medical, disability, and unemployment benefits." (Id. at p. 1182, italics added.)*

Although, as we discuss further below (p. 100, *post*), the court in *Castro* ultimately concluded in the third step of the governmental interest analysis (the comparative impairment prong) that Alabama law rather than California law should apply in the circumstances of that case, the passage in *Castro* quoted above supports the conclusion that California has a legitimate governmental interest in having California law applied in the present case. Application of the California statute of limitations to a current California resident who suffers an injury or illness as a result of his or her prior exposure to asbestos in another jurisdiction would assist such residents in obtaining compensation for their injuries and in not becoming dependent on the resources of California for necessary medical, disability, and unemployment benefits.[13]

Accordingly, California, as well as Oklahoma, has an interest in having its own law applied in this case.

Because the applicable laws of Oklahoma and California differ and each state has an interest in having its law applied under the circumstances of the present case, we are faced with a "true conflict." As explained above, in such instances we apply the so-called "comparative impairment" approach.

## C

Under the comparative impairment analysis, we must "carefully evaluate[] and compare[] the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's

[13] One federal court has expressed skepticism regarding whether "a state has a legitimate interest in having one of its residents collect money from the resident of another jurisdiction based on conduct that occurred outside the state's boundaries." (*Arno v. Club Med Inc.* (9th Cir. 1994) 22 F.3d 1464, 1468, fn. 5.) Although a few early United States Supreme Court decisions demonstrate that under some circumstances a state's interest in affording a remedy to a current resident is insufficient in itself to justify the choice of forum law over the law of another much more significantly involved jurisdiction (see, e.g., *John Hancock Ins. Co. v. Yates* (1936) 299 U.S. 178 [81 L.Ed. 106, 57 S.Ct. 129]), more recent high court decisions indicate that a state's interest in affording a remedy for an injury suffered by a current state resident, even when the injury results from a defendant's conduct in another state, is a constitutionally legitimate interest that properly may be considered as a relevant factor in determining the validity of a state court's choice-of-law ruling. (See, e.g., *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 819–821 [86 L.Ed.2d 628, 105 S.Ct. 2965]; *Allstate Ins. Co. v. Hague* (1981) 449 U.S. 302, 318–320 [66 L.Ed.2d 521, 101 S.Ct. 633] (plur. opn. of Brennan, J.); see also *Turcotte v. Ford Motor Co.* (1st Cir. 1974) 494 F.2d 173, 173–174.)

interest would be more impaired if its policy were subordinated to the policy of the other state.' " (*Kearney, supra*, 39 Cal.4th 95, 108.) In conducting this evaluation, our prior decisions emphasize that it is important to keep in mind that "[t]he court does not ' "weigh" the conflicting governmental interests in the sense of determining which conflicting law manifested the "better" or the "worthier" social policy on the specific issue. An attempted balancing of conflicting state policies in that sense . . . is difficult to justify in the context of a federal system in which, within constitutional limits, states are empowered to mold their policies as they wish. . . . [Instead, the process] can accurately be described as . . . a problem of allocating domains of lawmaking power in multi-state contexts—[by determining the appropriate] limitations on the reach of state policies—as distinguished from evaluating the wisdom of those policies. . . . [E]mphasis is placed on the appropriate scope of conflicting state policies rather than on the "quality" of those policies . . . .' " (*Bernhard, supra*, 16 Cal.3d 313, 320–321.)

Accordingly, our task is not to determine whether the Oklahoma rule or the California rule is the better or worthier rule, but rather to decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case.

### 1

In light of the relevant facts of this case, we conclude that a failure to apply Oklahoma law would significantly impair Oklahoma's interest. The conduct for which plaintiff contends Foster Wheeler should be held liable— plaintiff's alleged exposure to asbestos during the application of insulation to a boiler designed and manufactured by Foster Wheeler—occurred in Oklahoma in 1957, at a time when plaintiff was present in Oklahoma and was an Oklahoma resident. As already discussed, the circumstance that Foster Wheeler is not an Oklahoma company—the circumstance relied upon by the Court of Appeal—is not a persuasive basis for finding that the failure to apply Oklahoma law would not significantly impair Oklahoma's interest. Oklahoma's interest in the application of its statute of repose applies equally to out-of-state businesses that design improvements to real property located in Oklahoma and to Oklahoma businesses that design such improvements situated within that state.

Although California no longer follows the old choice-of-law rule that generally called for application of the law of the jurisdiction in which a defendant's allegedly tortious conduct occurred *without regard to the nature of the issue that was before the court* (see *Reich, supra*, 67 Cal.2d 551, 553), California choice-of-law cases nonetheless continue to recognize that a

jurisdiction ordinarily has "the predominant interest" in regulating conduct that occurs within its borders (*Reich, supra*, 67 Cal.2d 551, 556; see *Cable v. Sahara Tahoe Corp.* (1979) 93 Cal.App.3d 384, 394 [155 Cal.Rptr. 770]), and in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future. (See, e.g., *Offshore Rental, supra*, 22 Cal.3d 157, 168; *Castro, supra*, 154 Cal.App.4th 1152, 1180; *Cable, supra*, 93 Cal.App.3d 384, 394.)

In the present case, in the event Foster Wheeler were to be denied the protection afforded by the Oklahoma statute of repose and be subjected to the extended timeliness rule embodied in California law, the subordination of Oklahoma's interest in the application of its law would rest solely upon the circumstance that *after* defendant engaged in the allegedly tortious conduct in Oklahoma, plaintiff happened to move to a jurisdiction whose law provides more favorable treatment to plaintiff than that available under Oklahoma law.

Although here it is clear that plaintiff's move to California was not motivated by a desire to take advantage of the opportunities afforded by California law and cannot reasonably be characterized as an instance of forum shopping (cf. *Reich, supra*, 67 Cal.2d 551, 555–556), the displacement of Oklahoma law limiting liability for conduct engaged in within Oklahoma, in favor of the law of a jurisdiction to which a plaintiff subsequently moved, would—notwithstanding the innocent motivation of the move—nonetheless significantly impair the interest of Oklahoma served by the statute of repose. If Oklahoma's statute were not to be applied because plaintiff had moved to a state with a different and less "business-friendly" law, Oklahoma could not provide any reasonable assurance—either to out-of-state companies or to Oklahoma businesses—that the time limitation embodied in its statute would operate to protect such businesses in the future. Because a commercial entity protected by the Oklahoma statute of repose has no way of knowing or controlling where a potential plaintiff may move in the future, subjecting such a defendant to a different rule of law based upon the law of a state to which a potential plaintiff ultimately may move would significantly undermine Oklahoma's interest in establishing a reliable rule of law governing a business's potential liability for conduct undertaken in Oklahoma. (Accord, *Castro, supra*, 154 Cal.App.4th 1162, 1181 [Alabama, whose law limited the potential liability of a vehicle owner for the negligence of a permissive user, has an interest "in not having vehicle owners and drivers in its jurisdiction subjected to different liabilities based on the fortuity of which state a plaintiff happens to be a resident. . . . Alabama has an interest in the uniform application of motor vehicle laws to owners and drivers in Alabama."]; see also Hancock, *The Effect in Choice of Law Cases of the Acquisition of a New*

*Domicile After the Commission of a Tort or the Making of a Contract* (1979)
2 Hastings Int'l & Comp. L.Rev. 215, 218–219.)

**2**

By contrast, a failure to apply California law on the facts of the present case will effect a far less significant impairment of California's interest. Certainly, if the law of this state is not applied here, California will not be able to extend its liberal statute of limitations for asbestos-related injuries or illnesses to some potential plaintiffs whose exposure to asbestos occurred wholly outside of California. Nonetheless, our past choice-of-law decisions teach that California's interest in applying its laws providing a remedy to, or facilitating recovery by, a potential plaintiff in a case in which the defendant's allegedly tortious conduct occurred in another state is less than its interest when the defendant's conduct occurred in California. As we shall see, in a number of choice-of-law settings, California decisions have adopted a restrained view of the scope or reach of California law with regard to the imposition of liability for conduct that occurs in another jurisdiction and that would not subject the defendant to liability under the law of the other jurisdiction. Our view is that a similar restrained view of California's interest in facilitating recovery by a current California resident is warranted in evaluating the relative impairment of California's interest that would result from the failure to apply California law in the present setting.

Two California decisions discussed above are closely on point. As we have seen, in *Offshore Rental, supra,* 22 Cal.3d 157, the question before this court was whether Louisiana law (which barred an employer from maintaining an independent cause of action for economic damages resulting from an injury to a key employee) or California law (which permitted such a cause of action) should apply when an employee of a California company was injured in Louisiana allegedly as a result of the negligence of a company doing business in that state. Although recognizing that California had an interest in applying its law permitting recovery, because the plaintiff in that case was a California company, the court in *Offshore Rental* ultimately concluded that Louisiana law should apply, reasoning in part that "[b]y entering Louisiana, plaintiff 'exposed [i]tself to the risks of the territory,' and should not expect to subject defendant to a financial hazard that Louisiana law had not created." (22 Cal.3d at p. 169.) By parity of reasoning, because plaintiff in the present case was in (and, indeed, a resident of) Oklahoma at the time of his exposure to asbestos, for which he claims Foster Wheeler should be held responsible, it is reasonable to conclude that he "should not expect to subject defendant to a financial hazard that [Oklahoma] law had not created," and that California has a lesser interest in applying its law in that setting than it would in a case in which a defendant is responsible for exposing a plaintiff to asbestos within California.

Similarly, in *Castro, supra*, 154 Cal.App.4th 1162, the Court of Appeal reached a comparable conclusion in another choice-of-law case arising out of a factual setting in which a California resident was injured in another state and sought recovery from a commercial entity doing business in that other state. As described above, in *Castro* the California plaintiff was injured in Alabama in an accident allegedly caused by a negligent permissive user of a truck owned by defendant Budget Rent-A-Car, which had been leased in Alabama to an Alabama company. Alabama law provides that the owner of a motor vehicle who is not personally negligent is generally not liable for damages caused by the negligence of a permissive user of the vehicle, whereas California law generally imposes vicarious liability, up to a limited dollar amount, on a vehicle owner when a permissive user of the vehicle negligently injures another person. Although recognizing that California had a legitimate interest in the application of its law based upon Castro's status as a California resident (on the ground, as noted above, that application of California law "would serve to ensure that California residents injured in traffic accidents in other states would be compensated for their injuries and not become dependent on the resources of California for necessary medical, disability, and unemployment benefits" (154 Cal.App.4th at p. 1182)), the court in *Castro* concluded that such an interest was "not sufficient to reallocate Alabama's and California's ' "respective spheres of lawmaking influence." ' . . . [¶] . . . [B]y entering and driving in Alabama, Castro voluntarily exposed himself to the risks of that 'territory,' and therefore plaintiffs should not expect to subject Budget to a 'financial hazard' that Alabama law had not created. Based on the respective governmental interests of Alabama and California, Alabama's interest in allocating liability and deterring negligent driving within its borders would be more impaired by the application of California's permissive user statute than would California's interests if Alabama law is applied." (154 Cal.App.4th at p. 1182.) (See also *Tucci v. Club Mediterranee* (2001) 89 Cal.App.4th 180, 190–194 [107 Cal.Rptr.2d 401] [holding that other jurisdiction's law would be more impaired if defendant employer, who had obtained adequate workers' compensation insurance in compliance with the law of that jurisdiction, were to be subjected to a common law tort action, permitted under California law, that was filed by a California resident who was injured while working for defendant in the other jurisdiction]; *Arno v. Club Med Inc., supra*, 22 F.3d 1464, 1468 [holding that under California choice-of-law principles, French law, rather than California law, applied to tort action arising out of injury to California resident that occurred in France].)

As these decisions demonstrate, in allocating the " 'respective spheres of lawmaking influence' " (*Offshore Rental, supra*, 22 Cal.3d 157, 165) in cases in which a California resident is injured by a defendant's conduct occurring in another state, past California choice-of-law decisions

generally hold that when the law of the other state limits or denies liability for the conduct engaged in by the defendant in its territory, that state's interest is predominant, and California's legitimate interest in providing a remedy for, or in facilitating recovery by, a current California resident properly must be subordinated because of this state's diminished authority over activity that occurs in another state. Although under the circumstances of the present case this allocation of "lawmaking influence" results in the subordination of California's interest to the interest of Oklahoma, in other instances in which a defendant is responsible for exposing persons to the risks associated with asbestos or another toxic substance through its conduct *in California*, this general principle would allocate to *California* the predominant interest in regulating the conduct. (See, e.g., *North American Asbestos Corp. v. Superior Court* (1986) 180 Cal.App.3d 902, 907–908 [225 Cal.Rptr. 877] [holding California law applicable when the plaintiff was exposed to asbestos in California by a company incorporated in another state, where plaintiff's action against the company would have been barred as untimely under the other state's law].)

Plaintiff contends, however, that the foregoing analysis is erroneous and that cases such as *Offshore Rental, supra,* 22 Cal.3d 157, and *Castro, supra,* 154 Cal.App.4th 1162, are inapposite because the circumstances of the present case—in which plaintiff was a California resident when he was first diagnosed with an asbestos-related disease and when he incurred medical expenses in this state as a result of the disease—render this case analogous instead to the circumstances in *Kearney, supra,* 39 Cal.4th 95, in which the defendant's conduct, although engaged in within another state, had the direct effect of causing an injury in California. In our view, the proposed analogy to *Kearney* is not persuasive. The present situation is not similar to that presented in *Kearney,* in which the defendant, while outside of California, participated in an *interstate* telephone call with a California resident who was *in California* and, where the defendant, in violation of California privacy law, recorded (without the California resident's knowledge or consent) the words that were spoken by the California resident *in California*. Nor is this a case similar to one in which a defendant manufactures a product in another state and places the product in the stream of commerce under circumstances in which it is reasonably foreseeable that the product will make its way to California, and the product ultimately injures a person who uses it in California. (See, e.g., *Buckeye Boiler Co. v. Superior Court* (1969) 71 Cal.2d 893, 906 [80 Cal.Rptr. 113, 458 P.2d 57].) Instead, here plaintiff seeks to hold Foster Wheeler legally responsible for exposing him to asbestos in Oklahoma, and it is Oklahoma that bears the primary responsibility for regulating the conduct of those who create a risk of injury to persons within its borders.

 In arguing that Foster Wheeler should be viewed as having caused an injury that occurred in California, plaintiff relies heavily upon the circumstances that he was a resident of California when his exposure to asbestos many years earlier in Oklahoma ultimately manifested itself as an illness and caused him to incur considerable medical expenses resulting from the disease. Those circumstances, however, do not realistically distinguish the present matter from a case, such as *Castro, supra,* 154 Cal.App.4th 1162, in which a California resident is seriously injured in an automobile accident in another state and returns home to California for extensive medical treatment and long-term care. Although in such a case the plaintiff's long-term medical expenses are likely to be incurred in California and, if the plaintiff's resources are insufficient, the state ultimately may expend considerable financial resources for his or her care, past California choice-of-law decisions as we have seen have not treated that type of case as one in which a defendant's conduct has caused an injury in California. Those decisions instead have applied the choice-of-law analysis discussed above, recognizing that the state in which the alleged injury-producing conduct occurred (and in which a significant risk of harm to others is posed) generally has the predominant interest in determining the appropriate parameters of liability for conduct undertaken within its borders. (Accord, *Ferren v. General Motors Corp.* (1993) 137 N.H. 423 [628 A.2d 265, 268–269] [choice-of-law decision applying law of state where exposure to lead dust occurred, rather than of state where the plaintiff resided when illness was later discovered]; *Stephens v. Norwalk Hospital* (D.Conn. 2001) 162 F.Supp.2d 36, 43–44 [choice-of-law decision applying statute of limitations of state where medical malpractice occurred, rather than of state where the plaintiff resided and where injury manifested itself].)

3

For the reasons discussed above, we conclude that Oklahoma's interest (as embodied in its statute of repose) would be more impaired if its law were not applied under the circumstances of this case than would be California's interest if its statute of limitations is not applied. Accordingly, we conclude that the Court of Appeal erred in holding that California law rather than Oklahoma law should apply to the issue before us.[14]

---

[14] Because we conclude that under California's choice-of-law principles the law of Oklahoma should be applied to the issue presented by this case, we have no occasion to address Foster Wheeler's claims that application of California law under these circumstances would be so "arbitrary and unfair" as to violate the federal Constitution (see *Phillips Petroleum Co. v. Shutts, supra,* 472 U.S. 797, 818–822), or would violate the equal protection clauses of the California and federal Constitutions.

## IV

The judgment of the Court of Appeal is reversed and the matter is remanded to that court with directions to address plaintiff's additional contention that the trial court erred in finding that the boiler in question constituted an improvement to real property within the meaning of the relevant Oklahoma statute of repose. (See, *ante*, at p. 89, fn. 7.)

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.