Filed 2/10/15  Green v. CertainTeed Corp. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DOYLE D. GREEN et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> CERTAINTEED CORPORATION et al., <br><br>     Defendants and Respondents. | A134983 <br><br> (City and County of San Francisco <br> Super. Ct. No. CGC-11-275894) |

Plaintiffs Doyle D. Green and his wife Yvonne Green, Texas residents, appeal from adverse summary judgments entered in favor of several defendants in their action for damages arising from Doyle's exposure to asbestos and subsequent diagnosis of mesothelioma. The trial court ruled that Texas law governs plaintiffs' claims against certain defendants, including CertainTeed Corporation, Bucyrus International, Inc., Terex Corporation, and Shell Oil Company (collectively respondents), and applying Texas law granted respondents' motions for summary judgment and denied plaintiffs' motions for a new trial contesting two of the summary judgment rulings. We conclude the trial court correctly applied choice-of-law principles to the disposition of plaintiffs' claims and did not err in any of the rulings challenged on appeal.

**FACTS AND PROCEDURAL HISTORY**

Doyle was born in Texas in 1936. Between 1954 and 1966, he served as a seaman, gunner's mate, and laborer in the United States Navy. Most of his duty stations were located outside of California, but he did work at naval shipyards in Long Beach,

1

San Diego, and San Francisco. After leaving the Navy, Doyle worked as a laborer at a mine in New Mexico for two years. He then returned to Texas, where he lived until his death in 2012.

In July 2011, Doyle was diagnosed with mesothelioma, a cancer of the lining of the body's internal organs that can be caused by the inhalation of asbestos. Plaintiffs subsequently filed this action against respondents and dozens of other defendants, asserting claims for negligence, strict liability, and loss of consortium. Plaintiffs allege that Doyle was a California resident during a substantial period of his exposure to asbestos-containing products, but their claims against the four respondents arise out of Doyle's work history in Texas in the years following his discharge from the Navy.

As to CertainTeed, plaintiffs assert that, in the early 1980's, Doyle spent several months working as a crane operator on a project involving installation of the company's cement pipe, which allegedly contained crocidolite asbestos. Asbestos dust was purportedly released into the air when plumbers cut the pipe with large power saws. Bucyrus and Terex allegedly manufactured cranes that Doyle operated between the late 1960's and 1980, the brake linings of which allegedly contained asbestos. Plaintiffs claim that Doyle would often adjust, grind, and inspect the brake linings, releasing asbestos dust into the air. With respect to Shell, plaintiffs claim Doyle was exposed to amosite asbestos while working on the company's Odessa oil refinery for about two to six months in 1970.

In the proceedings below, codefendant Kelley Moore Paint Company, Inc., which has since settled, moved to apply Texas law to plaintiffs' claims. Respondents joined in the motion. The trial court granted the motion, holding that Texas law would apply to plaintiffs' claims against certain defendants to whose asbestos-containing products Doyle allegedly was exposed in Texas, but not to the claims against other defendants.

Subsequently, each respondent moved for summary judgment, arguing that under Texas law plaintiffs could not establish that Doyle's mesothelioma was caused by exposure to their products. With the exception of CertainTeed, each respondent also argued that Doyle simply was not exposed to any of its products that contained asbestos.

2

The court granted respondents' motions for summary judgment, holding that under Texas law CertainTeed, Terex and Shell had negated the element of causation, that Bucyrus had negated the element of exposure, and that plaintiffs had failed to produce evidence creating triable issues of those material facts. Plaintiffs filed motions for a new trial contesting the summary judgment orders as to CertainTeed and Shell, which were denied. Plaintiffs timely noticed their appeal from the judgments entered upon those orders.

## DISCUSSION

### I. Choice Of Law

As it presents a purely legal question, we review the trial court's choice-of-law determination de novo. (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1144.) Plaintiffs argue that the trial court erred in applying Texas law on the issue of causation and, alternatively, in refusing to apply the same causation standard to every defendant. The fact that suit was properly filed in a California court is not, of course, dispositive of the law to be applied. Under California's governmental interest test, we conclude the trial court properly applied Texas law to the claims against respondents, regardless of the fact that different rules of law may apply to the claims against other defendants.

### A. *Governmental Interest Test*

Under California's so-called "modern choice-of-law rule," the law to be applied when there are multiple potentially concerned jurisdictions is governed by a three-step governmental interest test. (*Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1454-1455.) Under the first step, the court must determine whether the applicable laws of California and Texas materially differ. (*Id.* at p. 1454.) If so, under the second step the court must determine whether both California and Texas have an interest in applying their own law to the dispute. (*Ibid.*) If both states have an interest, there is a true conflict and the court proceeds to the third step, known as the comparative impairment analysis, under which the court determines which state's interest would be more significantly impaired if its laws were not applied. (*Id.* at pp. 1454-1455.)

3

### 1.    Step One

Turning to step one, California and Texas apply different standards to determine the issue of causation in asbestos litigation. *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953 (*Rutherford*), sets forth the "substantial factor" test, the controlling California standard for causation in asbestos-induced personal injury cases. Under the substantial factor test, a plaintiff "must first establish some threshold exposure to the defendant's defective asbestos-containing products, and must further establish in reasonable medical probability that a particular exposure or series of exposures was a 'legal cause' of his injury, i.e., a *substantial factor* in bringing about the injury." (*Id.* at p. 982.) "[T]he plaintiff need *not* prove that fibers from the defendant's product were the ones, or among the ones, that actually began the process of malignant cellular growth." (*Ibid.*) A plaintiff may prove causation by "demonstrating that the plaintiff's exposure to [the] defendant's asbestos-containing product in reasonable medical probability was a substantial factor in contributing to the aggregate *dose* of asbestos the plaintiff or decedent inhaled or ingested, and hence to the *risk* of developing asbestos-related cancer." (*Id.* at pp. 976-977, fn. omitted.)

The Texas Supreme Court set forth its standard for causation in *Borg-Warner Corp. v. Flores* (Tex. 2007) 232 S.W.3d 765 (*Borg-Warner*). The court held that the plaintiff, a mechanic who had worked with brake pads manufactured by the defendant, had failed to show that his exposure to the brake pads caused his asbestosis, since the "record . . . reveal[ed] nothing about how much asbestos [the plaintiff] might have inhaled" as a result of that exposure. (*Id.* at p. 771.) After discussing the test set forth in *Rutherford*, the court concluded: "[S]ubstantial-factor causation, which separates the speculative from the probable, need not be reduced to mathematical precision. Defendant-specific evidence relating to the approximate dose to which the plaintiff was exposed, coupled with evidence that the dose was a substantial factor in causing the asbestos-related disease, will suffice. . . . Given asbestos's prevalence . . . some exposure 'threshold' must be demonstrated before a claimant can prove his asbestosis was caused by a particular product." (*Id.* at p. 773.) The court held that "proof of mere frequency,

4

regularity, and proximity is necessary but not sufficient." (*Id.* at p. 772.) It noted "[t]here were no epidemiological studies showing that brake mechanics face at least a doubled risk of asbestosis." (*Ibid.*, fn. omitted.) The court stated that, "[w]hile such studies are not necessary to prove causation . . . 'the requirement of more than a doubling of the risk strikes a balance between the needs of our legal system and the limits of science.' " (*Ibid.*) Ultimately, the court concluded that without evidence of at least "the approximate quantum of fibers to which [the plaintiff] was exposed," plaintiff failed to satisfy the de minimis rule espoused in a Fourth Circuit decision applying Maryland law that Texas courts followed. (*Id.* at p. 774.)

Plaintiffs argue that the tests set forth in *Rutherford* and *Borg-Warner* are the same, and that subsequent decisions from the Texas courts of appeal that require a stricter showing of causation have improperly strayed from *Borg-Warner*. These cases hold that a plaintiff must show (1) the total dose of asbestos from the defendant's products to which he or she was exposed, and (2) whether that dose exceeds a minimum threshold dose above which an increased risk of developing an asbestos-related disease occurs. (*Georgia-Pacific Corp. v. Stephens* (Tex.App. 2007) 239 S.W.3d 304, 320-321 (*Stephens*); *Smith v. Kelly-Moore Paint Co.* (Tex.App. 2010) 307 S.W.3d 829, 833 (*Smith*); *Georgia-Pacific Corp. v. Bostic* (Tex.App. 2010) 320 S.W.3d 588, 598-601, affd. (Tex. 2014) 439 S.W.3d 332 (*Bostic*).) These cases also discuss the importance of epidemiological studies in establishing causation. (*Stephens*, at pp. 310, 316-318; *Smith*, at p. 833; *Bostic*, 439 S.W.3d at p. 347.)

In their appellate briefs, plaintiffs contended that the validity of the appellate decisions issued after *Borg-Warner* had been called into doubt because the Texas Supreme Court had granted review of the court of appeal decision in the *Bostic* case. However, after the completion of briefing, the Texas Supreme Court affirmed the court of appeal's decision, confirming that the Texas causation standard in asbestos cases is

stricter than the California standard. (*Bostic*, *supra*, 439 S.W.3d 332.)[1] Although affirming applicability of the substantial factor causation analysis, the Texas high court enunciated other requirements that the California courts have not required to establish causation. (*Id.* at p. 353.) The court held that "in the absence of direct proof of causation, establishing causation in fact against a defendant in an asbestos-related disease case requires scientifically reliable proof that the plaintiff's exposure to the defendant's product more than doubled his risk of contracting the disease. A more than doubling of the risk must be shown through reliable expert testimony that is based on epidemiological studies or similarly reliable scientific testimony." (*Id.* at p. 350.) Additionally, the court noted that proof of doubling of the risk may not be sufficient in cases where there is evidence of significant exposure from other sources, for example where it is established that a source of asbestos other than defendant increased the plaintiff's chances of contracting mesothelioma by a factor of 10,000. (*Id*. at p. 351.)

        2.     *Step Two*

Since Texas and California apply materially different standards to determine causation in asbestos-related personal injury cases, we turn to step two of the governmental interest test to determine whether a true conflict exists. (*Frontier Oil Corp. v. RLI Ins. Co.*, *supra*, 153 Cal.App.4th at p. 1454.) We conclude that a true conflict does not exist because only Texas has a significant interest in the determination of plaintiffs' claims against respondents.

Plaintiffs argue that both states have an interest because Doyle was exposed to asbestos in California and Texas. However, plaintiffs are Texas residents, respondents have or had operations in Texas, and Doyle's alleged exposure to asbestos attributable to respondents' products or facilities occurred in Texas. Texas has an interest in providing its residents with legal remedies for injuries incurred within the state. It also has an

---

[1] Given the decision of the Texas Supreme Court, plaintiffs' request for judicial notice and Bucyrus' alternative motion for judicial notice, both requesting judicial notice of documents filed in the *Bostic* proceedings, are denied.

6

interest in protecting Texas businesses from liability by ensuring that asbestos injury claims meet a clearly defined standard of proof.

California's interest in the resolution of plaintiffs' claims against respondents is far less clear. The claims arise out of alleged exposure to asbestos products that occurred in Texas. While California has an interest in applying its law to claims involving out-of-state injuries of California residents (see *McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68, 95), Doyle has not lived or worked in California since he was discharged from the Navy in 1966. Plaintiffs do have claims against other defendants arising out of exposure to asbestos in California, but we are concerned with claims against respondents, not against the other defendants. Plaintiffs cite no authority suggesting that California has an interest in applying its law to a claim by an out-of-state resident against one defendant merely because that person also has claims against other parties to which California law properly applies.

### 3. Step Three

Although we conclude that no true conflict exists, to the extent that California has any interest in plaintiffs' claims against respondents, the third step of the governmental interest test would clearly favor application of Texas law. Since plaintiffs are Texas residents and Doyle's alleged exposure to respondents' asbestos-containing products occurred in Texas, Texas's interest in the application of its laws undoubtedly would be more significantly impaired by application of California law than would California's minimal interests be affected by applying Texas law. (*Frontier Oil Corp. v. RLI Ins. Co.*, *supra*, 153 Cal.App.4th at p. 1455.)

### B. Different Causation Standards May Be Applied to Different Defendants

Plaintiffs argue that two different standards of causation cannot be applied in the same case — one standard as against defendants responsible for Doyle's asbestos exposure in Texas and another against defendants causing exposure in California or elsewhere. Plaintiffs contend that the causation element of their claims is indivisible, that applying two different causation standards will lead to jury confusion, and that neither

7

respondents nor any other defendant asked the trial court to apply different causation standards.

Plaintiffs' final contention may be quickly answered. Kelley Moore's motion to apply Texas law, which was later joined by respondents, did request that the trial court apply Texas causation law to the entire case. But the briefing and argument of the parties clearly addressed the appropriateness of applying Texas as opposed to California law to the claims against these respondents. The briefing also brought out the differences in the claims against various defendants that pertain to the choice-of-law determination. There was no element of surprise in the court's ruling. By applying Texas law to only a subset of defendants, the trial court essentially granted the motion in part and denied the motion in part. There was no procedural error in doing so.

Plaintiffs contend that the "indivisibility of the causation element" to which reference was made in *Cossman v. DaimlerChrysler* (2003) 108 Cal.App.4th 370, 377 (*Cossman*) indicates that the same causation standard must be applied to the claims against all defendants. However, in that case the statement was made in the context of reiterating *Rutherford*'s holding that "a plaintiff need not prove which asbestos product 'actually began the process of malignant cellular growth.' " (*Ibid.*) The holding in *Cossman* was that the indivisibility of the causation element had no bearing on whether different statutes of limitations may apply to claims against different defendants. (*Ibid.*) We find nothing in *Cossman, Rutherford* or any other California authority that precludes determining causation and liability of different defendants under different standards appropriate to the claim against the respective defendant.[2]

---

[2] Moreover, although we need not reach the issue, we note that if the same substantive law were applied to all defendants, including defendants with no significant contact with the state the law of which is chosen, a significant constitutional problem would be presented. (See, e.g., *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 818 ["[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."].)

Contrary to plaintiffs' argument, applying two different causation standards will not necessarily cause jury confusion. "We must . . . assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." (*People v. Yoder* (1979) 100 Cal.App.3d 333, 338.) Passing the fact that there will be no jury to determine the claims against respondents since they are being resolved on summary judgment, were the claims to proceed to jury trial, there is no reason to believe that jurors would be unable to fairly apply two different causation standards if properly instructed. If the trial court deemed there to be a particular risk of confusion, separate trials could be ordered. In all events, we conclude there was no error in the trial court's choice of the law to be applied in evaluating plaintiffs' claims against the four respondents.

## II. Summary Judgment

### A.      *Standard of Review*

Summary judgment must be granted if all the papers and affidavits submitted, together with "all inferences reasonably deducible from the evidence" and uncontradicted by other inferences or evidence, show that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Where, as here, the defendant is the moving party, he or she may meet the burden of showing that a cause of action has no merit by proving that one or more elements of the cause of action cannot be established. (See *id.*, subd. (o).) The defendant may do so by offering affirmative evidence that negates an essential element of the plaintiff's cause of action or by offering the plaintiff's factually insufficient discovery responses. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1598.) Once the defendant has met that burden, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as to that cause of action. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 583.)

We review the trial court's summary judgment determinations de novo. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.) "We are not bound by the trial court's stated reasons or rationale. Instead, we review the summary judgment without deference to the

trial court's determination of questions of law. [Citations.] We may consider only those facts which were before the trial court, and disregard any new factual allegations made for the first time on appeal." (*Ibid.*)

B.    *CertainTeed, Terex, and Shell Motions for Summary Judgment*

The trial court granted summary judgment in favor of CertainTeed, Terex, and Shell on the ground that plaintiffs failed to create triable issues of material fact as to multiple issues in some cases, but as to all three of these respondents, to demonstrate that exposure to their respective products "was a substantial factor in causing [Doyle's] mesothelioma pursuant to Texas law."

As an initial matter, CertainTeed, Terex, and Shell successfully shifted the burden on the causation issue by presenting affirmative evidence tending to show that their products were not a substantial factor in contributing to Doyle's mesothelioma. CertainTeed offered the declarations of two experts, Robert Spence and Dr. Peter Barrett. Spence opined that Doyle's exposure from CertainTeed asbestos pipe was well below the asbestos exposure of a lifetime city dweller and therefore not significant. Barrett stated that there is unquestionably a threshold level of exposure to asbestos below which mesothelioma will not result and that exposure to background levels of asbestos does not cause mesothelioma. Terex and Shell offered similar declarations from other industrial hygienists and medical doctors.

This evidence shifted the burden to plaintiffs to demonstrate the existence of a triable issue as to the material fact of causation. As to each summary judgment motion, plaintiffs attempted to meet that burden by offering: (1) Doyle's declaration describing the circumstances of his exposure; (2) a declaration from William Ewing stating the amount and type of asbestos respondents' products contained and estimating the number of asbestos particles to which Doyle was exposed from those products;[3] and (3) a

---

[3] For example, Ewing's declaration regarding Doyle's exposure to asbestos in the brakes of Lorain cranes purportedly manufactured by Terex or its predecessors, after explaining his method of calculation, concludes that Doyle's "total dose from operating Lorain

10

declaration from Dr. Barry Horn opining that the exposure levels described by Ewing are significant.

This evidence was insufficient to raise a triable issue of material fact as to whether exposure to the products or facilities of CertainTeed, Terex, and Shell was a substantial factor in causing Doyle's mesothelioma. As discussed above, under Texas law a plaintiff must do more than establish that he or she was exposed to some asbestos attributable to the defendant. (*Borg-Warner*, *supra*, 232 S.W.3d at p. 773.) Rather, a plaintiff must quantify the exposure attributable to the defendant and establish that the exposure exceeded a threshold that resulted in a statistically significant increase in the risk of developing mesothelioma. (*Ibid.*; *Bostic*, *supra,* 439 S.W.3d at p. 353.) Moreover, "in the absence of direct evidence of causation, the plaintiff must prove with scientifically reliable expert testimony that the plaintiff's exposure to the defendant's product more than doubled the plaintiff's risk of contracting [mesothelioma]." (*Bostic*, at p. 353.) This is a high hurdle, and plaintiffs failed to clear it.

Setting aside respondents' evidentiary objections, Ewing's declarations merely set forth the total amount of asbestos to which Doyle was exposed attributable to each of the respondents. While quantification of exposure is necessary, it is not sufficient. Ewing does not explain the significance of the quantities that he estimated or opine whether the quantities were sufficient to create an increased risk of mesothelioma.

Horn's declarations do address these risks, but they also fail to provide the evidence necessary to meet the Texas causation standard. Based on the declarations of Doyle and Ewing, Horn opined that Doyle "suffered significant exposures to asbestos well above background/ambient levels of exposure." However, he does not specify whether these exposure levels exceed a minimum safe threshold. Instead, he asserts that every exposure to asbestos "counts" toward increasing the risk of mesothelioma and that

---

cranes was likely in the range of 72 million to 1.26 billion asbestos fibers from operating for 6 months."

there is "no known lowest threshold of asbestos below which no disease occurs."[4] Texas courts have repeatedly rejected this theory. (See *Bostic*, *supra*, 439 S.W.3d at p. 355; *Stephens*, *supra*, 239 S.W.3d at pp. 320-321). As the Texas Supreme Court explained in *Bostic*: "The any exposure theory effectively accepts that a failure of science to determine the maximum safe dose of a toxin necessarily means that every exposure, regardless of amount, is a substantial factor in causing the plaintiff's illness. This approach negates the plaintiff's burden to prove causation by a preponderance of the evidence."[5] (*Bostic*, at p. 340.)

Plaintiffs argue that the substantial factor requirements set forth *in Borg-Warner* and its progeny are inapposite with respect to CertainTeed and Shell because the type of asbestos to which they exposed Doyle was different from the asbestos at issue in the *Borg-Warner* case. They reason that *Borg-Warner*, *Stevens*, *Smith,* and *Bostic* involved

---

[4] Horn's declaration reads in part: "There is no method known to medicine or science by which to identify which fiber from which exposure caused mesothelioma to occur. There is no known lowest threshold of asbestos exposure below which no disease occurs. Accordingly, it is the consensus of medical, scientific, and epidemiological opinion that every exposure to asbestos 'counts' toward increasing the risk of disease. No exposure can be excluded as not having contributed to the risk. Every exposure to asbestos must be considered a substantial factor in causing the disease. [¶] . . . [¶] It is, therefore, my opinion that Mr. Green's exposure to asbestos from his work operating cranes and also his work adjusting and maintaining brakes on cranes; and being around joint compounds being mixed, sanded and swept up in his presence; and being around thermal insulation materials that were swept up in his presence were substantial factors in increasing his risk of developing mesothelioma, and therefore were substantial factors in causing his mesothelioma."

[5] Plaintiffs contend that to the extent that Texas authority requires plaintiffs to set a forth a minimum threshold dose, we should ignore that authority since such a test makes it "scientifically impossible to prove causation in an asbestos case." As plaintiffs point out, the petitioners in *Bostic* made an identical argument to the Texas Supreme Court. After this appeal was submitted, the Texas Supreme Court rejected the argument, reasoning that a less demanding standard would result in absolute liability against any company whose asbestos product crossed paths with the plaintiff and that Texas has "never embraced the concept of industry-wide liability on grounds that proof of causation might be difficult." (*Bostic*, *supra,* 439 S.W.3d at p. 340.) As Texas law controls here, we cannot disregard the causation requirements set forth by the state's high court.

chrysotile asbestos, which is less toxic than the crocidolite asbestos used by CertainTeed and the amosite asbestos used by Shell. We disagree. While the *Borg-Warner* court recognized the existence of different types of asbestos, its holding is not limited to chrysotile asbestos. (*Borg-Warner*, *supra*, 232 S.W.3d at pp. 773-774.) Likewise, the court in *Smith* criticized epidemiological studies submitted by the plaintiffs for failing to distinguish among asbestos fiber types, suggesting that plaintiffs must choose their causation studies carefully. (*Smith, supra*, 307 S.W.3d at pp. 838, fn. 11, 839.) But while crocidolite and amosite exposure thresholds likely are lower than those for chrysotile asbestos, it does not follow, under the Texas view, that exposure to any amount of crocidolite or amosite asbestos can be considered a substantial factor in the development of mesothelioma. Regardless of the type of asbestos involved, plaintiffs must still establish that the exposure exceeds a harm-inducing threshold.

Plaintiffs' additional procedural arguments fare no better. Plaintiffs contend that the trial court's rulings go beyond the issues framed by respondents' moving papers which, they assert, were grounded solely on the contention that plaintiffs lacked evidence "quantifying" Doyle's exposure. However, in their moving papers respondents described the requirements of the substantial factor test set forth in *Borg-Warner* and argued that plaintiffs could not meet those requirements. While they argued that plaintiffs could not quantify the level of Doyle's asbestos exposure for which each was responsible, the moving papers did not suggest that merely producing evidence quantifying the amount of asbestos to which Doyle was exposed would satisfy the Texas standard. They argued that such evidence is necessary but not sufficient. Nor did the trial court err in relying on Texas authority that was not cited in CertainTeed and Shell's moving papers. While CertainTeed and Shell cited only *Borg-Warner* and *Stephens*, the Texas Court of Appeal decisions in *Smith* and *Bostic* cited by the trial court do not enunciate a new causation standard but merely elucidate the standard set forth in *Borg-Warner*. Moreover, both cases were cited in Kelley-Moore's earlier motion to apply Texas law, and plaintiffs cited *Bostic* in their opposition to that motion. There was no element of unfair surprise in the trial court's decision.

C.    *Bucyrus's Motion for Summary Judgment*

We address Bucyrus's motion for summary judgment separately because the trial court did not grant its motion based on plaintiffs' failure to establish a triable issue on the element of causation, but on their inability to prove that Doyle was exposed to any asbestos product for which Bucyrus was responsible. Nonetheless, without passing on the correctness of that determination, the summary judgment in Bucyrus's favor must be upheld on the same grounds as the judgments in favor of the other respondents. The evidence submitted by Bucyrus negated both exposure and causation, and plaintiffs' evidence failed to create a triable issue on the element of causation. So long as the opposing party had an adequate opportunity to address the issue, this court may affirm the summary judgment on any correct legal theory, whether or not it is the theory adopted by the trial court. (*Lujano v. County of Santa Barbara* (2010) 190 Cal.App.4th 801, 806.)

Bucyrus moved for summary judgment arguing that plaintiffs could not establish exposure to, or causation of Doyle's mesothelioma from exposure to, its products. Unlike the other respondents, Bucyrus did not present epidemiological studies or expert declarations to the effect that Doyle's exposures fell below a safe threshold. Bucyrus argued that plaintiffs could not establish any exposure to its products or causation, supported by Doyle's own deposition testimony. At his deposition, Doyle testified that he could not recall when, how often, or for how long he operated Bucyrus cranes; how often he performed maintenance on their asbestos brakes; or whether those brakes were even made or distributed by Bucyrus. He also indicated that he could only speculate as to whether Bucyrus cranes contained asbestos components made, sold, or distributed by Bucyrus.

In attempting to show triable issues as to exposure and causation, plaintiffs submitted declarations similar to the ones filed in opposition to the summary judgment motions of CertainTeed, Terex, and Shell. Doyle's declaration, however, attempted to clarify and expand upon his deposition testimony, providing more specificity as to the circumstances of his exposure to asbestos brakes on Bucyrus cranes, and stating he knew Bucyrus manufactured the brakes on his cranes because he recalled seeing Bucyrus brake

14

boxes on his jobsites. Plaintiffs also submitted a declaration from Ewing estimating the total amount of Doyle's exposure to asbestos emanating from the brakes on Bucyrus cranes, based on Doyle's description of his exposures, and a declaration from Horn opining that Doyle's exposure to Bucyrus brakes was a substantial factor in contributing to his mesothelioma.[6]

Bucyrus objected to Doyle's declaration on the ground that it contradicted his deposition testimony and therefore was inadmissible under *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 (*D'Amico*). The trial court sustained Bucyrus's objections and thus concluded that plaintiffs had failed to raise a triable issue as to exposure.

We need not determine whether Doyle's declaration was properly excluded under *D'Amico* and its progeny because even if the declaration is considered, plaintiffs failed to create a triable issue on the element of causation. Ewing and Horn's declarations submitted in opposition to the Bucyrus motion suffer from the same defects as the declarations submitted in opposition to the CertainTeed, Terex, and Shell summary judgment motions. Ewing does not explain whether the quantity of asbestos to which he estimates Doyle was exposed from Bucyrus brakes was significant. And Horn, although opining that that quantity was a substantial causative factor of Doyle's mesothelioma, relies on the theory that there is no known threshold of asbestos exposure below which no disease occurs. As discussed above, this theory has repeatedly been rejected by Texas courts. (See *Bostic*, *supra*, 439 S.W.3d at p. 355; *Stephens*, *supra*, 239 S.W.3d at pp. 320-321.) Thus, plaintiffs failed to establish a triable issue under Texas law as to the element of causation by Bucyrus products for the same reason they failed to do so with respect to the products and facilities of the other respondents. Hence, summary judgment was properly granted in favor of Bucyrus.

---

[6] Plaintiffs also offered testimony from Bucyrus's corporate representative, indicating that Bucyrus often sold and distributed replacement brakes for its cranes, as well as a warranty agreement requiring the purchaser of Bucyrus cranes to use Bucyrus replacement parts.

### III. Motions for New Trial

Plaintiffs also appeal the trial court's order denying their motions for a new trial as to CertainTeed and Shell. "A motion for a new trial is appropriate following an order granting summary judgment. [Citations.] . . . [E]ven though, strictly speaking, 'summary judgment . . . is a determination that there shall be no trial at all.' " (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 858.) We review orders granting or denying a new trial for abuse of discretion. (*Id.* at p. 859.) However, when denial relies on the resolution of a question of law, we examine the matter de novo. (*Id.* at p. 860.)

Most of the reasons for which plaintiffs argue that the new trial motions should have been granted are duplicative of their contentions regarding the summary judgment motions and are rejected for the same reasons. However, plaintiffs also contend the trial court erred in refusing to consider supplemental declarations from Horn. The new declarations opined that Doyle's exposure to CertainTeed and Shell's asbestos more than doubled his risk of mesothelioma, and attached epidemiological studies showing the high toxicity of crocidolite and amosite asbestos and deposition testimony from CertainTeed and Shell's experts acknowledging the high toxicity of this asbestos.[7]

The trial court rejected this additional evidence on the ground that it was not newly discovered and could have been presented with plaintiffs' original opposition to the summary judgment motions. The trial court did not abuse its discretion in so ruling. To obtain a new trial based on new evidence, a party must demonstrate: "(1) the evidence is newly discovered; (2) he or she exercised reasonable diligence in discovering and producing it; and (3) it is material to the moving party's case." (*Plancarte v. Guardsmark*

---

[7] Horn's supplemental declaration in support of the motion as to Certain Teed concluded: "It is, therefore, my opinion that Mr. Green's exposure to asbestos from his work around the cutting and beveling of CertainTeed asbestos cement pipe as quantified by Mr. Ewing was a substantial contributing factor in increasing his risk of developing mesothelioma, and therefore was a substantial contributing factor in causing his mesothelioma. It is also my opinion based on relevant epidemiological studies that Mr. Green's exposure from the cutting and beveling of CertainTeed asbestos cement pipe more than doubled Mr. Green's risk of developing mesothelioma." (Fn. omitted.)

(2004) 118 Cal.App.4th 640, 646.) Here, Horn had already submitted declarations in support of plaintiffs' oppositions to summary judgment and all of the cited epidemiological studies were over a decade old.

Plaintiffs argue that while this evidence might not be new, they were unaware that this evidence was necessary since the summary judgment motions of CertainTeed and Shell merely asserted that plaintiffs could not quantify Doyle's exposure. However, as discussed above, the motions of CertainTeed and Shell were not predicated on this single deficiency. The showing made in support of the summary judgment motions shifted the burden to plaintiffs to present sufficient evidence to create triable issues as to both exposure and causation. Plaintiffs were given fair notice of the issues they were required to address, and the trial court did not abuse its discretion by refusing to give them a second bite of the apple.

Moreover, even if the additional evidence were not rejected as untimely, the supplemental declaration did not require a new trial for another reason. Under Texas law, "the reviewing court must determine whether the epidemiological evidence is indeed reliable before it can be used to support an expert's opinion. [Citation.] This means that the expert must identify the study, get it admitted into evidence, and explain how the methodology of the study is scientifically reliable." (*Minnesota Mining and Mfg. Co. v. Atterbury* (Tex. App. 1998) 978 S.W.2d 183, 198.) Horn's supplemental declaration does not attempt to explain or even describe the epidemiological studies upon which he relies. He merely asserts he reviewed the studies and concludes they support his opinion that Doyle's exposures doubled his risk of mesothelioma. Thus, the trial court could well conclude that consideration of the supplemental declarations would not produce a different resolution of the summary judgment motions.

## DISPOSITION

The judgments are affirmed. Respondents shall recover their costs on appeal.

17

_____
Pollak, J.


We concur:


_____
McGuiness, P. J.


_____
Jenkins, J.