Filed 10/6/20  Sullivan v. Thieman Tailgates CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL SULLIVAN,<br><br>         Plaintiff and Appellant,<br><br>v.<br><br>THIEMAN TAILGATES, INC.,<br><br>         Defendant and Respondent. | A155026<br><br><br>(Contra Costa County<br>Super. Ct. No. MSC16-00786) |

This is an appeal from judgment in a product liability lawsuit brought by plaintiff Michael Sullivan against defendant Thieman Tailgates, Inc. (Thieman).  The trial court granted Thieman's motion for summary judgment after finding that Ohio law governed this lawsuit and that, pursuant to Ohio's 10-year statute of repose (Ohio Rev. Code Ann., § 2305.10, div. (C)(1)), plaintiff's strict product liability and negligence causes of action were time-barred.  For reasons that follow, we conclude the trial court erred in applying Ohio's 10-year statute of repose rather than California's two-year statute of limitations.  Accordingly, we reverse the judgment and remand this matter to the trial court for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

This lawsuit arises out of injuries plaintiff sustained in 2014 while using a truck liftgate manufactured and designed by Thieman, a corporation

1

based in Ohio.[1] Thieman sells liftgates to third parties for installation and use. Thieman sold the liftgate involved in this case (hereinafter, subject liftgate) to Dealers Truck Equipment, a dealer in Kentucky, in 1997, the same year the liftgate was manufactured. After the liftgate left Thieman's facility in 1997, Thieman performed no service, warranty, repair or maintenance work on the subject liftgate.

Also in 1997, the following occurred. The subject liftgate was installed onto a model year 1998 Ford F800 diesel truck in Kentucky. This assembled truck was then sold to Boyer Ford Trucks, Inc., a dealership in Minnesota. Boyer Ford Trucks, in turn, sold the truck to Gelco Corporation, an automotive fleet located in Montana. Lastly, in December 1997, Gelco Corporation leased the truck to Canteen Corporation, an entity doing business in California.

Between December 1997 and 2011, the Ford truck with the subject liftgate was registered and licensed to and used by Canteen Corporation in California. At some point, Canteen Corporation became a division of Compass Group, which was then merged into Trinity Services Group, Inc.

Plaintiff, a California resident, was employed by Trinity Services Group to deliver, load and unload cargo. On April 25, 2014, plaintiff completed a work assignment delivering food items to the Santa Rita Jail in Dublin, California, in the aforementioned Ford truck. Plaintiff was standing on the subject liftgate with his feet partly on the liftgate's second and third plates, waiting to be lowered to the ground.[2] Suddenly and without warning, the

---

[1] A liftgate is a platform that installs onto the rear of a vehicle and may be raised or lowered to facilitate the loading or unloading of cargo.

[2] The subject liftgate consists of three plates that extend when lowered to move a load. The first plate adjoins the rear end of the Ford truck's box,

2

subject liftgate malfunctioned when the metal plates of the liftgate opened up, causing plaintiff's legs to drop straight down and become wedged between the plates. Plaintiff consequently suffered serious injuries to his lower extremities and back.

On April 25, 2016, plaintiff filed a complaint asserting causes of action for strict product liability, negligence and negligent infliction of emotional distress. Plaintiff subsequently filed an amended complaint adding defendants Automotive Rentals, Inc.; ARI Fleet LT; and Forklift Mobile, Inc. Thieman answered this amended complaint on May 3, 2017.

On February 21, 2018, Thieman moved for summary judgment or, in the alternative, summary adjudication based on Ohio's 10-year statute of repose, arguing plaintiff's claims were barred because his injuries occurred more than 10 years after the subject liftgate's initial sale in 1997. Plaintiff opposed this motion, arguing California's statute of limitations governed this lawsuit and, under this statute, his claims were timely.

On March 14, 2018, following a contested hearing, the trial court granted Thieman's motion. In doing so, the court found, first, that Ohio's statute of repose applied and, second, that pursuant to this statute, both plaintiff's strict liability claims and his negligence claims, which were based on the same alleged tortious conduct, were time-barred.

Plaintiff filed a motion for a new trial, which the trial court denied on August 6, 2018, after two hearings and additional briefing. The court then entered judgment in favor of Thieman, prompting plaintiff's timely appeal.

---

the second plate extends outward from the first plate, and the third plate extends outward from the second plate.

3

**DISCUSSION**

Plaintiff challenges the trial court's findings on summary judgment that Ohio's 10-year statute of repose governs this lawsuit and requires dismissal of his strict liability and negligence causes of action for untimeliness.[3] Specifically, plaintiff contends the trial court's grant of summary judgment in Thieman's favor was erroneous because: (1) California's choice of law rules require application of California law in this case; (2) his causes of action are timely under California's two-year statute of limitations; (3) California's so-called borrowing statute (Code Civ. Proc., § 361) mandates application of California's two-year statute of limitations; (4) Thieman forfeited the right to rely on Ohio's statute of repose by failing to raise it as an affirmative defense in its answer; and (5) even if Ohio's statute of repose bars his strict product liability cause of action, his negligence cause of action survives because it is a separate claim. We address each issue to the extent appropriate below.

**I.    Standard of Review.**

The standard of review of a trial court order granting a defendant's summary judgment motion is not in dispute. "A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see also *id*., § 437c, subd. (f) [summary adjudication of issues].) The moving party bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish, a prima facie case . . . .' [Citation.] On appeal from the granting of a motion for

_____

[3] Plaintiff conceded for purposes of summary judgment that his cause of action for negligent infliction of emotional distress was subsumed within his negligence cause of action.

4

summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

## II.  California Choice of Law Principles.

Here, the trial court granted summary judgment for Thieman after finding as a matter of law that Ohio law governs this lawsuit and time-bars plaintiff's product liability claims.  Plaintiff challenges this finding as erroneous and contends the law of California, his chosen forum, should govern.  " '[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state.  In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it.  [Citations.]' [Citation.]" (*Bernard v. Harrah's Club* (1976) 16 Cal.3d 313, 317–318.)  Choice of law questions are reviewed de novo.  (*Offshore Rental Co., Inc. v. Continental Oil Co.* (1978) 22 Cal.3d 157, 163 & fn. 5 (*Offshore Rental*).)

### A.  *Three-prong Governmental Interest Test.*

The California Supreme Court, in *Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95 (*Kearney*), set forth a three-prong governmental interest test for determining whether California law or another state's law governs a particular case, citing the "seminal" decision, *Reich v. Purcell* (1967) 67 Cal.2d 551.  "First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.  Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine

whether a true conflict exists.  Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state' [citation], and then ultimately applies 'the law of the state whose interest would be the more impaired if its law were not applied.' " (*Kearney*, at pp. 107–108; see *Chen v. Los Angeles Trucker Centers, LLC* (2019) 7 Cal.5th 862, 867–868 (*Chen*).)  While the governmental interest test may at first glance appear straightforward, the California Supreme Court recently recognized its complexity, borrowing a legal scholar's observation that: " 'Perhaps no legal subject has caused more consternation and confusion among the bench and bar than choice of law.' " (*Chen*, at p. 867.)

Here, the parties agree the first two prongs of the governmental interest test are met but disagree on whether, under the third prong, Ohio or California law should apply.

## B.  *First Prong: Ohio and California Law.*

First, the parties agree there are two choices of law in this case: (1) California—the state in which the Ford truck with the subject liftgate was registered, licensed to and used by plaintiff's employer; the place of plaintiff's residence and where he was injured, and the forum; and (2) Ohio—the place of Thieman's corporate headquarters and the place where the subject liftgate was manufactured and designed.

Moreover, as the trial court found and the parties agree, Ohio and California law differ on the relevant issue of whether plaintiff's claims are timely.  Under Ohio law, a 10-year statute of repose bars a product liability suit, like this one, against a manufacturer more than 10 years after the date

6

the allegedly defective product was delivered to its first purchaser or lessee. (Ohio Rev. Code Ann., § 2305.10, div. (C)(1) ["no cause of action based on a product liability claim shall accrue against the manufacturer or supplier of a product *later than ten years* from the date that the product was delivered to its first purchaser or first lessee who was not engaged in a business in which the product was used as a component in the production, construction, creation, assembly, or rebuilding of another product" (italics added)].)  Under California law, a two-year statute of limitations governs product liability cases.  (Code Civ. Proc., § 335.1 ["Within two years:  An action for . . . injury to, or for the death of, an individual caused by the wrongful act or neglect of another"].)

Thieman concedes that if California's statute of limitations were to apply, plaintiff's claims would be timely because his suit was filed on April 25, 2016, a date within two years of his injury, which occurred on April 25, 2014.

### C.  *Second Prong: Ohio's and California's Conflicting Interests.*

The trial court and the parties also agree that a true conflict exists, as both Ohio and California have legitimate and conflicting interests in having their own laws applied in this case.  (See *Offshore Rental*, *supra*, 22 Cal.3d at pp. 163–164 [only if each involved jurisdiction has a legitimate but conflicting interest in applying its own law will there be a "true conflict," requiring the court to address the third prong of the government interest test].)

With respect to California's interest, courts have identified the following purposes served by holding manufacturers liable for placing defective products in the market:  (1) ensuring the costs of injuries are borne by the manufacturers rather than by the "injured persons who are powerless to protect themselves" (*Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63); (2) providing " 'a "short cut" to liability where negligence may

7

be present but difficult to prove"; (3) providing "an economic incentive for improved product safety"; (4) inducing "the reallocation of resources toward safer products"; and (5) spreading "the risk of loss among all [product users]" (*Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1186).

With respect to Ohio's interest, the editor's notes to Ohio Revised Code Annotated section 2305.10, enacted in 2005, explain that two primary legislative objectives underlie its enactment: (1) "[t]o recognize that a statute of repose for product liability claims would enhance the competitiveness of Ohio manufacturers by reducing their exposure to disruptive and protracted liability with respect to products long out of their control, by increasing finality in commercial transactions, and by allowing manufacturers to conduct their affairs with increased certainty"; and (2) "[t]o . . . strike a rational balance between the rights of prospective claimants and the rights of product manufacturers and suppliers and to declare that the ten-year statutes of repose prescribed in those sections are rational periods of repose intended to preclude the problems of stale litigation but not to affect civil actions against those in actual control and possession of a product at the time that the product causes an injury to real or personal property, bodily injury, or wrongful death[.]"

Thus, it is clear both states have an interest in the application of their respective laws governing whether plaintiff's product liability claims may proceed.

D. *Third Prong: Greater Impairment to California's Interest.*

Remaining for our consideration is the governmental interest test's third prong, which entails the appropriate evaluation of the nature and strength of each jurisdiction's interest in the application of its own law in order to determine which interest would be the more impaired if its law were

8

*not* applied. (*Kearney*, *supra*, 39 Cal.4th at pp. 107–108.) When conducting this evaluation, we do not decide which jurisdiction has the "better" or "worthier" rule. Rather, we "decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." (*McCann v. Foster Wheeler, LLC* (2010) 48 Cal.4th 68, 97 (*McCann*).)

The trial court found Ohio had the predominant interest in this case. Specifically, the court found California's interest in protecting its residents from injuries occurring in California by defective products was outweighed by Ohio's interest in "protecting the rights of its manufacturers from stale litigation involving products out their controls for many years." (*Sic.*)

In challenging the court's ruling as erroneous, plaintiff argues that there is no California case in which a plaintiff who was a California resident injured by a defective product at a California work site was denied the right to proceed in his or her selected forum. Plaintiff also notes that Ohio's statute of repose (Ohio Rev. Code Ann., § 2305.10, div. (C)(1)) was not enacted until nearly nine years after Thieman sold the subject liftgate to its first user, who was in California, and accordingly, Thieman could not have relied on it when designing and manufacturing the subject liftgate and obtaining insurance for its work. Finally, plaintiff contends that all material witnesses and most of the evidence (including the subject liftgate) are in California and that he has a companion worker's compensation case proceeding in California.

Thieman responds that the subject liftgate was designed and manufactured in Ohio and, as such, that much of the material evidence and witnesses are in Ohio. Moreover, plaintiff's injury occurred 17 years after the

9

subject liftgate was manufactured, making his lawsuit just the sort of stale lawsuit that Ohio's statute of repose was enacted to prevent. Finally, Thieman contends there is no likelihood that plaintiff will become a "burden" to California because if he prevails in his worker's compensation case, he will receive disability benefits and compensation for his medical expenses.

We begin our assessment of the parties' arguments with a recent observation from the Ninth Circuit Court of Appeals: "California's courts have frequently applied foreign laws that serve to protect businesses by limiting liability, even when applying that law precludes recovery by injured California residents." (*Cooper v. Tokyo Electric Power Company Holdings* (9th Cir. 2020) 960 F.3d 549, 562.) For example, in *Offshore Rental*, *supra*, a California corporation sued a Louisiana company for the loss of services of a " 'key' employee" who was injured on the defendant's Louisiana premises. (22 Cal.3d at p. 160.) Both jurisdictions (Louisiana and California) had legitimate and conflicting interests in the application of their respective laws in the case. Louisiana, "the locus of the business of both plaintiff and defendant out of which the injury arose, and the place of the injury," had a legitimate interest in limiting liability for Louisiana businesses in order to "promot[e] freedom of investment and enterprise *within Louisiana's borders . . . .*" (*Id.* at pp. 161, 168.) California, plaintiff's principal place of business and selected forum, and a place where defendant conducted some business, had a legitimate interest in protecting California employers against economic harm arising from negligent injury inflicted by third parties on their key employees. (*Id.* at pp. 161, 164.) Ultimately, however, the California Supreme Court decided that Louisiana's "vital interest" would be more significantly impaired than California's were the court to disregard its policies. In doing so, the court noted that, one, California's law, which

10

permitted lawsuits such as the plaintiff's, was antiquated and out of step with other jurisdictions and, two, that the accident in question "occurred within Louisiana's borders." (*Id*. at pp. 167–168.) The court thus affirmed dismissal of the case pursuant to Louisiana law.

Similar facts were involved in *McCann*, *supra*, 48 Cal.4th 68. The plaintiff, a longtime California resident, was exposed to asbestos while working at an oil refinery in Oklahoma in the 1950's, when he was in his 20's. He was diagnosed with mesothelioma in California many decades later. (*Id*. at pp. 76–78.) The defendant corporation was headquartered and manufactured the asbestos-containing boiler in New York. (*Id*. at pp. 77, 91.) The California Supreme Court determined Oklahoma and California (not New York) had legitimate and conflicting interests. California had an interest in protecting injured residents and providing relief from asbestos-related harm, even when such harm does not manifest until years or even decades after a resident's exposure. (*Id*. at pp. 93–94.) California also has an interest in assisting its residents in obtaining compensation for their injuries so that they do not become dependent on state resources for necessary medical, disability, and unemployment benefits. (*Id*. at p. 96.) Oklahoma, in turn, had an interest in promoting commercial activity within its borders by limiting liability for businesses operating there. (*Id*. at pp. 93, 98.) After evaluating these conflicting interests, the court applied Oklahoma's 10-year statute of repose, which required dismissal of the plaintiff's lawsuit, rather than California's more generous statute of limitations. In doing so, the court followed other courts in adopting a "restrained view" of California's interest in recovery for its injured residents where the underlying injury or injury exposure occurred in another jurisdiction, particularly where, as there, the other jurisdiction, Oklahoma, had a strong interest "in establishing a reliable

11

rule of law governing a business's potential liability for conduct undertaken in Oklahoma." (*Id*. at pp. 98–99.)

Thus, in both *Offshore Rental* and *McCann*, the California Supreme Court chose the law of the foreign jurisdiction over California law, focusing on the fact that the accident-causing injury or toxic exposure occurred in the foreign jurisdiction. The court then identified the foreign jurisdiction's vital interest in regulating conduct within its own borders. As *McCann* explained, California choice of law cases "recognize that a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders (*Reich v. Purcell*, *supra*, 67 Cal.2d 551, 556; see *Cable v. Sahara Tahoe Corp.* (1979) 93 Cal.App.3d 384, 394 [citation], and in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." (*McCann*, *supra*, 48 Cal.4th at pp. 98–99; see *Cooper v. Tokyo Electric Power Company Holdings*, *supra*, 960 F.3d at p. 563 ["California's interest in compensation for injured residents failed to overcome [Japan's] interest in limiting defendants' substantive liability for injuries occurring within its borders"].)

Both parties contend these California Supreme Court cases support their respective positions. Plaintiff, arguing for application of California law, contends California courts have focused on the place of injury and insists no court has ever done what the trial court did in this case—apply the law of a foreign jurisdiction to dismiss a lawsuit brought by a California resident harmed by an allegedly defective product in California. Thieman, in turn, contends the above described cases were focused on where the "injury-producing conduct" occurred, not, as plaintiff insists, where the injury arose.

12

Based on this logic, Thieman contends the trial court properly applied Ohio law because its allegedly tortious conduct—defectively designing and manufacturing a defective product—took place in Ohio.

As for plaintiff's argument, the California Supreme Court has made clear that while the place of injury is a relevant consideration, it is not necessarily dispositive in a choice of law dispute. (*McCann*, *supra*, 48 Cal.4th at pp. 97–98.) At the same time, however, we conclude Thieman's argument misconstrues the nature of California product liability law. As the *Kearney* court notes, "the federal system contemplates that individual states may adopt distinct policies to protect their own residents and generally may apply those policies to businesses that choose to conduct business within that state." (*Kearney*, *supra*, 39 Cal.4th at p. 105.) In California, "[i]t is accepted law that the conduct which forms the basis for liability for damages under the theory of strict products liability is tortious in nature. . . . 'A manufacturer is *strictly liable in tort* when an article he [or she] places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.' (*Greenman v. Yuba Power Products, Inc.*, *supra*, 59 Cal.2d 57, 62, italics added.)" (*Barrett v. Superior Court*, *supra*, 222 Cal.App.3d at pp. 1187–1188.)

Thus, a manufacturer's liability arises not simply from its design or construction of a defective product. Rather, a manufacturer's liability arises from its placement of a defective product on the market. When it is reasonably foreseeable to the manufacturer that the defective product will enter California through the stream of commerce, the manufacturer may be held liable under California's product liability law. (See *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 348 ["Regardless of a defendant's position in the chain of distribution, 'the basis for his liability remains that he has marketed or

13

distributed a defective product' [citation], and that product caused the plaintiff's injury"]; *Cooper v. Tokyo Electric Power Company Holdings*, *supra*, 960 F.3d at p. 561 ["California has a legitimate interest in ensuring that its injured residents are compensated for injuries resulting from the design and manufacture of faulty products, as well as providing an easy way to prove liability"].)

Thieman is therefore correct in asserting that California choice of law cases recognize a jurisdiction generally has the predominant interest in regulating conduct within its own borders. (*McCann*, *supra*, 48 Cal.4th at pp. 100–102; *Reich v. Purcell*, *supra*, 67 Cal.2d at p. 556.) Thieman is wrong to suggest, however, that the conduct for which plaintiff seeks to impose liability is conduct that occurred wholly within Ohio's borders. If, as plaintiff alleged, Thieman marketed a defective product in California or placed a defective product into the stream of commerce without warning foreseeable California consumers of the product's hazards, Thieman may be held liable under California product liability law. (See *Taylor v. Elliott Turbomachinery Co. Inc.* (2009) 171 Cal.App.4th 564, 575–576 ["California's products liability doctrine 'provides generally that manufacturers, retailers, and others in the marketing chain of a product are strictly liable in tort for personal injuries caused by a defective product' "]; *Groll v. Shell Oil Co.* (1983) 148 Cal.App.3d 444, 448 ["California courts have held that a product, though faultlessly made, may nevertheless be deemed defective within the general strict liability rule if it is unreasonably dangerous to place the product in the hands of the user without adequate warnings"].)

## III. Reversal of the Judgment and Remand to the Trial Court Are Required.

In summary, the core of the wrongful injury-producing conduct alleged by plaintiff was not simply that Thieman designed and made a defective

14

liftgate with inadequate warnings, but that Thieman made and placed into the stream of commerce a defective liftgate that caused his physical injuries. If it was reasonably foreseeable that this defective liftgate would end up in the hands of a California consumer, such as plaintiff, then California has a predominant interest in regulating Thieman's business activities within its borders. (See *McCann*, *supra*, 48 Cal.4th at p. 93 ["the appellate court . . . erred in suggesting that Oklahoma's interest in having its statute applied was negated by the circumstance that the design and manufacture of the boiler in question occurred in New York rather than in Oklahoma. The statute of repose here at issue protects not only construction-related businesses that engage in their activities at the Oklahoma site of the improvement, but also commercial entities . . . that conduct their activities away from the location of the improvement but whose potential liability flows from a plaintiff's interaction with, or exposure to, the real property improvement in Oklahoma"].)[4]

_____

[4] Indeed, when holding that the law of Oklahoma rather than California law should apply to the plaintiff's asbestos lawsuit, the California Supreme Court in *McCann* distinguished product defect cases where a California consumer is injured by a product sold in the California market: "Nor is this a case similar to one in which a defendant manufactures a product in another state and places the product in the stream of commerce under circumstances in which it is reasonably foreseeable that the product will make its way to California, and the product ultimately injures a person who uses it in California. (See, e.g., *Buckeye Boiler Co. v. Superior Court* (1969) 71 Cal.2d 893, 906 [citations].) *Instead, here plaintiff seeks to hold Foster Wheeler legally responsible for exposing him to asbestos in Oklahoma, and it is Oklahoma that bears the primary responsibility for regulating the conduct of those who create a risk of injury to persons within its borders.*" (*McCann*, *supra*, 48 Cal.4th at p. 101, italics added.)

The California Supreme Court also acknowledged the impact of the multistate nature of commerce on the conflict of law analysis in *Kearney*. (39 Cal.4th at pp. 104–105, citing *Watson v. Employers Liability Corp.* (1954) 348

15

In its order, the trial court found it was "not reasonably foreseeable that the lift gate would end up in California," as "Thieman did not sell the lift gate in California, nor did it sell to a California corporation." The court then relied on this finding when concluding that Ohio's interest would be significantly more impaired than California's interest were the court to apply California law. We reject this reasoning. Foreseeability of harm to a consumer is a factual issue reserved for the jury. (*Huynh v. Ingersoll-Rand* (1993) 16 Cal.App.4th 825, 833.) Plaintiff, as the party opposing summary judgment, was entitled to all favorable inferences reasonably drawn from the evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) Here, there was evidence that Thieman conducted business in many states outside Ohio, including California—indeed, Thieman produced a "Customer List for California" identifying dozens of such customers. (All caps omitted.) A reasonable inference could thus be drawn that it was reasonably foreseeable that the subject liftgate would end up in the possession of a California resident. Neither the trial court nor Thieman identified any evidence requiring the opposite conclusion. Accordingly, there is a triable issue of fact in this case regarding the foreseeability of plaintiff's injury. (See *id.* at p. 856.)

U.S. 66, 72 [upholding Louisiana's application of a Louisiana law authorizing an injured person to bring a "direct action" against an insurer doing business in Louisiana even though the insurance policy in question, which contained a clause prohibiting direct actions, was issued in Massachusetts, explaining: " 'As a consequence of the modern practice of conducting widespread business activities throughout the entire United States, this Court has in a series of cases held that more states than one may seize hold of local activities which are part of multistate transactions and may regulate to protect interests of its own people, even though other phases of the same transactions might justify regulatory legislation in other states' "].)

Last, we agree with plaintiff that the fact that Ohio's statute of repose was nonexistent until 2005, many years after the subject liftgate left Thieman's possession and entered California in 1997, diminishes Ohio's interest in having its law apply. Thieman could not have relied on the statute of repose when making key business decisions relating to its design and manufacture of the subject liftgate, including the decision to purchase any particular insurance policy to protect against liability arising therefrom. (Cf. *Offshore Rental, supra*, 22 Cal.3d at p. 169 ["The present plaintiff, a business corporation, is a potential 'victim' peculiarly able to calculate such risks and to plan accordingly. Plaintiff could have obtained protection against the occurrence of injury to its corporate vice-president by purchasing key employee insurance, certainly a reasonable and foreseeable business expense"].) At the same time, the record on appeal clearly reflects the multistate nature of Thieman's business. The subject liftgate, for example, was built in Ohio, installed on a Ford truck in Kentucky, sold to a Ford dealer in Minnesota, sold to an automotive fleet in Montana, and then leased to a corporate entity (plaintiff's employer) that first used the Ford Truck affixed with the subject liftgate in California. (See pp. 1–3, *ante*.) Under these circumstances, Thieman could have reasonably anticipated being subject to the product liability laws of states outside Ohio, such as California, and could therefore have planned accordingly when purchasing insurance.

Accordingly, applying the California Supreme Court's conflict of law principles while affording all favorable factual inferences to plaintiff as the party losing on summary judgment, we conclude that a failure to apply California law would significantly impair California's interest in this case.[5]

_____

[5] Both sides also rely on the presence of material witnesses and evidence in their respective states. Plaintiff argues that the subject liftgate

17

The conduct for which plaintiff contends Thieman should be held liable—plaintiff's injury as a result of an allegedly defective product designed and manufactured by Thieman—occurred in California when plaintiff, a California resident, was using a product that Thieman placed into the stream of commerce. Under these circumstances, the trial court erred by applying Ohio's 10-year statute of repose to plaintiff's strict liability and negligence causes of action, and thereby rendering plaintiff's lawsuit time-barred. Reversal of the judgment against plaintiff and in favor of Thieman is required.[6] On remand, the trial court is instructed to apply California law to plaintiff's claims.

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with the opinions reached herein. Plaintiff shall recover costs on appeal.

---

and many key witnesses (including treating physicians and percipient witnesses) are in California. Thieman points out that the material witnesses and evidence relating to Thieman's design and manufacture of the subject liftgate (aside from the subject liftgate itself) are likely in Ohio. We conclude this issue is neutral, favoring neither side.

[6] Because we reverse on this ground and remand for further proceedings, we need not address plaintiff's alternative arguments based on the forfeiture doctrine, the so-called borrowing statute (Code Civ. Proc., § 361), and the separateness of his negligence claim from his strict lability claim.

 

 

_____
Jackson, J.


WE CONCUR:


_____
Siggins, P. J.


_____
Petrou, J.


A155026/*Sullivan v. Thieman Tailgates, Inc.*